Allen C. KAISER, Plaintiff–Appellant,

v.

UNITED STATES POSTAL SERVICE
and the National Rural Letter Carriers
Association, Defendants–Appellees.

No. 89–1897.

United States Court of Appeals,
Sixth Circuit.

Argued May 7, 1990.

Decided July 10, 1990.

Bruce B. Elfvin, Barbara Kaye Besser (argued), Elfvin & Associates, Cleveland, Ohio, for plaintiff-appellant.

Peter A. Caplan, Asst. U.S. Atty., Detroit, Mich., Anthony W. DuComb (argued), Office of Labor Law, U.S. Postal Service, Washington, D.C., for U.S. Postal Service.

Michael Kimber, Levin, Levin, Garvett & Dill, Southfield, Mich., William B. Peer, Washington, D.C., for Nat. Rural Letter Carriers Ass'n.

Before KENNEDY and RYAN, Circuit Judges, and EDWARDS, Senior Circuit Judge.

KENNEDY, Circuit Judge.

Appellant, a postal worker, was treated as a new hire when he sought reassignment from an urban letter-carrier route to a rural route. He claims his wages were wrongfully reduced when he was transferred to the rural route. Appellant sued his union, the National Rural Letter Carriers Association (NRLCA), under 39 U.S.C. § 1208(b), alleging that it breached its duty of fair representation. He also sued the United States Postal Service, claiming that he had an implied right of action under 39 U.S.C. § 1006, which establishes career postal employees' right of transfer. The District Court, in granting summary judgment for appellees, rejected his section 1208(b) claim on the basis that appellant failed to exhaust his remedies under the collective bargaining agreement and his section 1006 claim after holding that Congress did not intend section 1006 to confer an implied right of action on postal employees. Finding no error in the District Court's judgment, we AFFIRM.

In 1987, appellant took and passed an examination in order to become a rural letter carrier for the United States Postal Service (USPS). He was offered and accepted a position as a rural carrier upon representations by a Postmaster Heffington that he would not experience a cut in pay. Prior to his reassignment he also received a form from the Postal Service stating that his pay would not be reduced. However, his first paycheck as a rural carrier was substantially below his previous salary as an urban carrier. When he informed his supervisor of this, appellant was told it was the result of a clerical error and would be taken care of. He learned one month later that his salary had in fact been reduced from $27,401 as a city carrier to $19,541 as a rural carrier.

Appellant filed a Step 1 grievance. At a hearing he learned that he had been placed on the rural carrier's pay schedule as a new employee, notwithstanding ten years of prior service. Following the denial of his Step 1 grievance, he filed a Step 2 grievance. His area steward, Robert Knight, told him that Article 9.1(B) of the NRLCA contract put him at the Step B pay level and considered him a new hire.[1] Appellant alleges that Knight told him the NRLCA was tired of city carriers taking rural carrier jobs and that Knight consequently was reluctant to pursue his grievance vigorously. Knight did say, however, that if appellant was promised his former pay level upon reassignment, the NRLCA would pursue a grievance. On November 28, 1987, Knight told appellant that Zipporia Sloan, a Detroit labor relations official, had extended the time limit for presenting a Step 2 grievance.

On December 7th, Sloan returned appellant's Step 2 grievance for resubmission or further Step 1 discussions. Appellant then contacted the NRLCA labor relations director, Steven Smith, who told appellant on

---

1. The apparent purpose of Article 9.1(B) of the labor agreement is to guarantee job promotion of rural letter carriers by treating urban carriers who transfer as new hires. However, appellant contends that the rural route for which he was hired was vacant, so he was not displacing any rural carrier.

December 13th that pending contract negotiations would hopefully put him at his previous pay rate. Appellant telephoned Knight on December 21st and asked about the status of his grievance. He phoned again on January 6, 1988, at which time Knight told him he needed some original documents to process the Step 2 appeal. Appellant submitted copies and was informed on January 12th by Knight that he would not appeal the grievance without original documents.

On February 7th, appellant wrote to Smith and renewed his request for a Step 2 hearing. Receiving no response, appellant filed the present action in federal court. On November 14, 1988, the NRLCA appealed the grievance to Step 2. Appellant unsuccessfully appealed his grievance up through Step 4. His case proceeded to arbitration, which was scheduled for May 5, 1989. The District Court granted summary judgment for appellee on April 27, 1989, holding that appellant failed to exhaust his remedies called for in the collective bargaining agreement. Appellant made a motion to alter or amend that judgment when the May 5th hearing did not occur because of a scheduling conflict. That motion was denied on the ground that arbitration had been rescheduled for June 7, 1989 [2].

*A. Appellant's Section 1208(b) Claim*

█ Appellant claims that the union's failure to process his grievance in a timely manner constituted a breach of the duty of fair representation and breach of contract. It is well-settled that a plaintiff must exhaust contract remedies before seeking review in federal court. To recover from an employer for a violation of a collective bargaining agreement, an employee must first show that his union breached its duty of fair representation in handling his grievance. *Bowen v. United States Postal Service*, 459 U.S. 212, 103 S.Ct. 588, 74 L.Ed.2d 402 (1983). To establish that the union breached its duty of fair representation, the employee "must *attempt* use of the

contract grievance procedure agreed upon by employer and union as the mode of redress." *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965) (emphasis in original). This Court has stated that "[i]t is axiomatic that an aggrieved employee must exhaust any exclusive grievance and arbitration procedure created in a collective bargaining agreement prior to bringing a ... suit against the employer." *Poole v. Budd Co.*, 706 F.2d 181, 183 (6th Cir.1983).

█ Appellant brought his section 1208(b) suit before exhaustion of the arbitration and grievance procedures set out in the collective bargaining agreement. He claims, however, that he fits within the exceptions to total exhaustion carved out in *Clayton v. International Union, U.A.W.*, 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981). Exhaustion is not required where: 1) the union officials appear so hostile that a fair hearing is not possible; 2) the grievance and arbitration procedure is inadequate to address the problem or award full relief; or 3) exhaustion would delay the ability to get a judicial hearing on the claim. *See Vaca v. Sipes*, 386 U.S. 171, 185, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967) (exhaustion to be disregarded only if employer's conduct repudiates contractual remedies, use of grievance procedure would be futile, or union breaches duty by wrongfully refusing to process grievance). The District Court expressly found "no serious suggestion of any basis for finding that exhaustion of plaintiff's internal appeal rights will be futile" and held that exhaustion before filing his federal action was not excused. Appellant points to delay and animosity on the part of Knight and Smith in processing his grievance. However, most, if not all, of the delay was caused by appellant's unwillingness to comply with the union's demand that it be furnished with original documents. Moreover, the fact that appellant's grievance was processed and arbitration was held belies his assertion that the union wrongfully refused to process his grievance once given

---

**2.** That hearing was apparently held, and a final arbitration Opinion and Award was issued on

November 15, 1989, denying appellant's grievance.

**50**

the required documents. We agree with the District Court that appellant was required to and failed to exhaust his administrative remedies.

## B. Appellant's Implied Right of Action Under Section 1006

 Appellant claims the District Court erred in holding he has no implied right of action under section 1006. That section provides that:

> Officers and employees in the postal career service of the Postal Service shall be eligible for promotion or transfer to any other position in the Postal Service or the executive branch of the Government of the United States for which they are qualified. The authority given by this section shall be used to provide a maximum degree of career promotion opportunities for officers and employees and to insure continued improvement of postal services.

39 U.S.C. § 1006. In determining whether a federal statute confers an implied right of action, we are required to consider whether: 1) the plaintiff is of the class for whose *especial* benefit the statute was created; 2) whether there is any legislative intent, explicit or implicit, which either creates or denies a private remedy; 3) whether finding an implied cause of action is consistent with the underlying purposes of the legislative scheme; and 4) whether the cause of action is one that is traditionally left to state law such that it would be inappropriate to infer a cause of action based only on federal law. *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975).

Appellant clearly meets the first *Cort* criteria. Section 1006 was enacted to guarantee the right of employees in the postal service to be eligible for transfers and promotions, and appellant is unquestionably a postal employee. In deciding if the second factor—legislative intent to create a private remedy—is met,

[w]e look first, of course, to the statutory language, particularly to the provisions made therein for enforcement and relief. Then we review the legislative history and other traditional aids of statutory interpretation to determine congressional intent.

*Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 13, 101 S.Ct. 2615, 2623, 69 L.Ed.2d 435 (1981). The language of section 1006 does not evidence an intent to create a private cause of action. Section 1006 provides that career postal employees shall be *eligible* for transfer and promotion if they are otherwise qualified, but it does not *entitle* them to transfer and promotion.[3] Although the stated purpose of the section is to "provide a maximum degree of career promotion opportunities for officers and employees," we fail to see how merely making employees eligible for transfer and promotion implies a congressional intent to vest employees with a legal cause of action whenever a transfer or promotion is denied. The congressional goal of maximizing career opportunities in the postal service can be accomplished by making employees *eligible* for transfer and promotion without giving them a cause of action to assert if they are denied transfer or promotion.

The distinction we draw between "eligibility" and "entitlement" is borne out by United States Supreme Court opinions discussing private causes of action. Statutory language that "explicitly confer[s] a right directly on a class of persons that include[s] the plaintiff in the case" indicates a congressional intent to create a private right of action. *See Universities Research Ass'n v. Coutu*, 450 U.S. 754, 770, 101 S.Ct. 1451, 1461, 67 L.Ed.2d 662 (1981), *citing Cannon v. University of Chicago*, 441 U.S. 677, 690 n. 13, 99 S.Ct. 1946, 1954 n. 13, 60 L.Ed.2d 560 (1979). However, if the statute merely imposes a duty without "an unmistakable focus on the benefited class," *Cannon*, 441 U.S. at 691, 99 S.Ct. at 1955,

---

**3.** Appellant argues that because 39 U.S.C. § 1006 is labeled "Right *to* Transfer," he is given entitlement to transfer and promotion. However, § 1006 is in fact entitled "Right *of* Trans-fer." This title seems consistent with our holding that § 1006 merely extends eligibility of transfer and promotion, rather than entitlement to transfer and promotion.

there is "far less reason" to infer a private cause of action. *Id.* at 690–91, 99 S.Ct. at 1954–55. Section 1006 is a statute of the latter kind. Rather than providing an unmistakable right to postal employees by entitling them to transfer and promotion, it merely makes them eligible for promotion and transfer. Section 1006's language does not show an intent to create a private right of action.

Failing to find intent to create a private cause of action in the language of section 1006, we must examine the statute's legislative history for evidence of such intent. In holding that section 1006 does not provide a private right of action, the District Court relied on *Blaze v. Payne*, 819 F.2d 128 (5th Cir.1987) and *Gaj v. United States Postal Service*, 800 F.2d 64 (3d Cir.1986). Both *Blaze* and *Gaj* found that section 1001(b)'s legislative history was devoid of an intent to create a private cause of action. Appellant argues that these cases are not determinative of whether a private right of action exists under section 1006, since section 1001 "merely directs the Postal Service to establish personnel management procedures." *Blaze*, 819 F.2d at 129–30. According to appellant, however, section 1006 grants a specific substantive right to postal employees for transfer and promotion in a way that section 1001 does not.

In discussing the general purposes of the Postal Reorganization Act, 39 U.S.C. § 101 *et seq.*, the Third Circuit Court of Appeals in *Gaj* stated:

> The clear intent of Congress in passing the Postal Reorganization Act was to make the Postal Service an independent executive agency, to improve the efficiency of the mail system, to improve labor management relations, and to make the Postal Service self-supporting. 39 U.S.C. § 101. Neither the language of the statute nor its legislative history shows that Congress intended to create a private remedy.

800 F.2d at 68. Admittedly, these statements were made in the context of determining whether section 1001(b) provided a private right of action. However, the Fifth Circuit Court of Appeals in *Blaze* conducted a broader review of the legislative scheme created by the Postal Reorganization Act which applies equally to section 1006. It held that because of the labor law scheme embodied in the entire Act, Congress did not intend to provide a private cause of action:

> Reinforcing our conclusion that Congress did not intend to authorize an additional employee remedy in § 1001(b) is the otherwise comprehensive labor law scheme that was embodied in the Postal Reorganization Act, 39 U.S.C. § 101 et seq. and was modeled after private sector labor law. 39 U.S.C. §§ 1201–09.... Pursuant to this scheme, postal employees were given full right to bargain collectively over their wages, hours, and conditions of employment through exclusive bargaining representatives. 39 U.S.C. § 1202–06. The Postal Service is the only federal entity covered by the National Labor Relations Act and subject to the jurisdiction of the National Labor Relations Board. Postal employees, like private employees, may file unfair labor practice charges with the NLRB ... or pursue employment discrimination claims.... Congress expressly deviated from the private sector model in granting postal preference eligibles, principally veterans, the option to challenge adverse actions before the Merit Systems Protection Board. 39 U.S.C. § 1005. In the face of this carefully crafted body of labor law pronouncements, the Third Circuit's description of Congressional intent [in *Gaj*] is, if anything, an understatement. There is no room for the weedlike implied remedy sought by Blaze in the flourishing garden of express employee remedies created pursuant to the Postal Reorganization Act.

*Blaze*, 819 F.2d at 130 (citations omitted; footnote omitted). The existence of a myriad of employment remedies compels the finding that Congress did not intend private enforcement of employment rights under the Postal Reorganization Act.

 Appellant also argues that 28 U.S.C. § 1339 gives district courts original jurisdiction to hear civil cases arising under

"any Act of Congress relating to the postal service." From this he contends that private causes of action exist side-by-side with the remedies provided in the Postal Reorganization Act, since it would be inconsistent for Congress to eliminate private causes of action without modifying section 1339. This reasoning is flawed in several respects. First, the presence of congressionally-conferred federal jurisdiction does not evidence an intent to provide a right to be heard in federal court. *See National Ass'n of Postal Supervisors v. United States Postal Serv.*, 602 F.2d 420, 429 (D.C. Cir.1979) ("[t]he existence of a jurisdiction-conferring statute does not alone create a right of action for judicial review ...."). Second, the broad grant of jurisdiction for suits arising from "any Act of Congress relating to the postal service" does not imply that Congress intended there to be a private right of action with regard to section 1006. Saying that federal courts have jurisdiction to hear civil actions arising under any act relating to the postal service in no way means that all acts relating to the postal service give rise to a civil right of action.

Having determined that neither the language, structure, nor the legislative history of the statute shows a congressional intent to fashion an implied private remedy, we need not consider the remaining two factors outlined in *Cort. See California v. Sierra Club*, 451 U.S. 287, 298, 101 S.Ct. 1775, 1781, 68 L.Ed.2d 101 (1981) (last two *Cort* "factors are only of relevance if the first two factors give indication of congressional intent to create the remedy").

### C. Conflict Between the Labor Contract and 39 U.S.C. § 1006

Appellant lastly argues that under the Supremacy Clause of the United States Constitution, the Postal Reorganization Act preempts any contractual agreement and that therefore the Postal Service cannot rely on contract provision to deprive appellant of rights guaranteed by the Postal Reorganization Act. He says that the contract requirement that all new rural carriers begin at Step B pay level violates his right to transfer under section 1006. We

disagree. First, it is clear that his "right" to transfer was not impeded, since he is currently a rural carrier. Second, as discussed above, section 1006 does not confer an absolute right to transfer, but rather makes postal employees eligible for transfer and promotion. Third, even assuming that section 1006 does confer such a right, there is nothing in the statute that requires employees to be transferred at their previous rate of pay. There is no conflict between 39 U.S.C. § 1006 and the pay structure as set out in the bargaining agreement.

Because appellant failed to exhaust available remedies as provided in the collective bargaining agreement, his claim under 39 U.S.C. § 1208(b) was properly dismissed. His claim under section 1006 was also properly dismissed because there is no indication that Congress intended the private cause of action asserted by appellant. Accordingly, the judgment of the District Court is AFFIRMED.