939 F.2d 1516
 119 Lab.Cas. P 10,906
 Richard GLENN, Robert Brown, Earl Roloff, Marvin Simpson,
Vince Gange, and Joe Harris for themselves and
others similarly situated, Plaintiffs-Appellants,
v.
UNITED STATES POSTAL SERVICE, Anthony M. Frank, Postmaster
General, Postal Service Board of Governors,
National Rural Letter Carriers
Association, Defendants-Appellees.
 No. 90-3751.
 United States Court of Appeals,
Eleventh Circuit.
 Aug. 30, 1991.
 
 Kent Spriggs, Spriggs & Kidder, P.A., Tallahassee, Fla., for plaintiffs-appellants.
 Stephen E. Alpern, Anthony W. DuComb, Associate Gen. Counsel, U.S. Postal Service, Office of Labor Law, Washington, D.C., Ken Sukhia, Roy F. Blondeau, Jr., Asst. U.S. Attys., Tallahassee, Fla., for U.S. Postal Service.
 Frank E. Hamilton, III, Tampa, Fla., for NRLCA.
 Appeal from the United States District Court for the Northern District of Florida.
 Before JOHNSON and COX, Circuit Judges, and GODBOLD, Senior Circuit Judge.
 GODBOLD, Senior Circuit Judge:
 
 
 1
 This case concerns conditions under which city mail carriers employed by the United States Postal Service may seek and obtain positions as rural mail carriers for the Postal Service. The conditions in question are imposed by collective bargaining agreements between the Postal Service and the National Rural Letter Carriers Association, the bargaining agent for the rural carriers' craft. City carriers are represented by another bargaining agent, the National Association of Letter Carriers.
 
 
 2
 Five plaintiffs are city mail carriers who desire positions as rural mail carriers. The sixth plaintiff, Joe Harris, is a former city carrier who secured a position as rural carrier but at a lower salary level. All are veterans who, pursuant to 39 U.S.C. Sec. 1005(a)(2), were eligible for preference upon appointment to the Postal Service. All exercised their preference in securing appointment to the Postal Service.
 
 
 3
 The defendants are the Postal Service and its Board of Governors, the Postmaster General, and the National Rural Letter Carriers Association.
 
 
 4
 On cross-motions for summary judgment the district court granted summary judgment to defendants.
 
 I. Background and Case History
 
 5
 The National Rural Letter Carriers Association and the Postal Service are parties to nationwide collective bargaining agreements that contain provisions outlining how open positions for rural carrier are to be filled and setting the pay step for all new appointments to the rural carrier craft. Plaintiffs question the validity of several collective bargaining provisions that inhibit their access to rural carrier vacancies and affect their entry pay level in these jobs.
 
 
 6
 First, substitutes for regular rural carriers, known as "rural carrier associates", are within the craft represented by the collective bargaining agreement, but they are not considered to be career employees. They serve in lieu of regular rural carriers who are ill or on leave and in vacancies until filled. To become substitute mail carriers they are not required to take a competitive examination for employment but are appointed for those positions by the Postmaster General on recommendations from regular rural carriers. These substitute rural carriers are given bid rights for regular, i.e., full-time, rural carrier positions ahead of other Postal Service employees (including the city carrier plaintiffs) not covered by the bargaining agreements. Plaintiffs contend that these categorical preferences must be eliminated.
 
 
 7
 Second, persons employed elsewhere in the Postal Service, including the city carrier plaintiffs, who seek positions as regular rural carriers, must take a competitive exam, as must applicants from outside the Service, while substitute rural carriers seeking regular rural carrier positions need not take a competitive exam. Plaintiffs contend that they and substitute rural carriers must be placed upon a register based upon the same examination requirements.
 
 
 8
 Third, new appointments in the rural carrier craft must start at wage step B. For an appointee coming to the rural carrier craft from a city carrier position this pay level may be lower than the appointee held in the city carrier job. This wage provision was established by an arbitration board in 1982 pursuant to 39 U.S.C. Sec. 1207 and was incorporated into the 1984 collective bargaining agreement for rural carriers and has remained in subsequent agreements. Plaintiffs contend that they are entitled to move into rural carrier jobs at the same pay levels they enjoy as city carriers.
 
 
 9
 Fourth, plaintiffs say that the process of bidding for and awarding rural carrier positions must permit them to meaningfully exercise the veterans' preference conferred by 39 U.S.C. Sec. 1005(a)(2).
 
 
 10
 Understanding and deciding this case are encumbered by semantic differences, differing perceptions of the subject matter involved, and shifting positions of the plaintiffs. To state it succinctly, plaintiffs, employed in one craft in the Postal Service and represented by one union, wish to obtain different jobs in another craft in the same agency. The other craft is represented by a different union that works under a collective bargaining agreement. Collective bargaining and union representation were retained for the Postal Service when it was created.[1] Plaintiffs' desire to move into the other jobs and the other craft are inhibited by collective bargaining provisions negotiated for rural carriers that limit plaintiffs' access and control their entry salary levels. Plaintiffs wish to compete for, and to receive, the other jobs free of these collective bargaining provisions.
 
 
 11
 Plaintiffs must, of course, establish some basis for a right to do what they wish, overriding the congressional policy providing for collective bargaining in the Postal Service and the bargaining agreements reached pursuant to that policy. In the district court they asserted two bases for their alleged rights. First, they contended that a statutory right to "transfer" within the Postal Service is conferred by 39 U.S.C. Sec. 1006, which provides:
 
 Right of transfer
 
 12
 Officers and employees in the postal career service of the Postal Service shall be eligible for promotion or transfer to any other position in the Postal Service or the executive branch of the Government of the United States for which they are qualified. The authority given by this section shall be used to provide a maximum degree of career promotion opportunities for officers and employees and to insure continued improvement of postal services.
 
 
 13
 P.L. 91-375, Aug. 12, 1970, 84 Stat. 719, 732. Plaintiffs, alleged to be members of a subclass who wish to "transfer" to rural carrier jobs, are alleged to be deprived of a "meaningful transfer opportunity." Second, they contended that, as members of a subclass who wish to transfer to rural carrier positions, they are deprived of their rights to a "meaningful implementation" of veterans' preference that they enjoy by Sec. 1005(a)(2).[2] That section provides:
 
 
 14
 The provisions of title 5 relating to a preference eligible (as that term is defined under section 2108(3) of such title) shall apply to an applicant for appointment and any officer or employee of the Postal Service in the same manner and under the same conditions as if the applicant, officer, or employee were subject to the competitive service under such title. The provisions of this paragraph shall not be modified by any program developed under section 1004 of this title or any collective-bargaining agreement entered into under chapter 12 of this title.
 
 
 15
 The opinion of the district court is attached as an Appendix. Summarizing, the court, responding to the issues as presented to it, granted summary judgment to the defendants, holding:
 
 
 16
 (1.) As to Sec. 1006: There is no private right of action, express or implied, provided by Sec. 1006. Thus it is unnecessary for the court to decide whether Sec. 1006 was violated.
 
 
 17
 (2.) As to Sec. 1005(a)(2): Plaintiffs seek to transfer from their positions in the city carrier craft to positions in the rural carrier craft (or, in Harris' case, already have transferred). Veterans' preferences accorded by 39 U.S.C. Sec. 1005(a)(2) do not apply to transfers.
 
 
 18
 To understand plaintiffs' position in the district court it is necessary to examine the complaint. It reveals beyond question that plaintiffs claimed to have rights under Sec. 1006 and Sec. 1005(a)(2) in their capacity as persons who wished to transfer to rural carrier jobs. Suit was brought on behalf of a class defined as career employees of the Postal Service "who desire to transfer to the Rural Carrier job ('Career Transfer Applicants')" and those employees who have been forced to accept a discriminatorily low pay grade step "after transferring into Rural Carrier ('Career Transfers ')." Second amended complaint p 6(2). The individual plaintiffs alleged they are similarly situated. Id. p 6(3). It was alleged that plaintiff Glenn took the test "required of those seeking to transfer to Rural Carrier," p 3(a); that plaintiff Roloff "took the test for transferring to Rural Carrier," and has "never been offered an opportunity to transfer," p 3(c); that plaintiff Simpson "took the test to transfer to the Rural Carrier position," and "has not been offered an opportunity to transfer," p 3(d); that plaintiff Gange "took the test for Rural Carrier" and was told that "if he transferred to the Rural Carrier craft "he would take a pay cut," p 3(e); that plaintiff Harris was "allowed to transfer to Rural Carrier" "but suffered a reduction in pay," p 3(f); that requiring a competitive examination of city carriers who are "seeking transfer to Rural Carrier" violates due process, p 16; and that "the [collective bargaining agreements] violate the rights of the Career Transfer Applicant subclass to a meaningful transfer opportunity as mandated by Congress in 39 U.S.C. Sec. 1006," p 14, and "violate the rights of the Transfer Applicant subclass to a meaningful implementation of the Veterans Preference which they may enjoy by law under 39 U.S.C. Sec. 1005(a)(2)," p 15.
 
 
 19
 Thus, plaintiffs alleged as a source of rights the Sec. 1006 reference to "transfer," which, plaintiffs say, must be "meaningful" and the veterans' preference of Sec. 1005(a)(2), which they say must be "meaningfully implemented" with respect to them. Plaintiffs asserted no right originating elsewhere in the Postal Service statutes that purports to entitle an employee to "transfer" to another job vacancy within the Postal Service free of collective bargaining provisions that relate to that job.
 
 
 20
 The Postal Reorganization Act, 39 U.S.C. Sec. 1209(a), provided that labor relations within the Postal Service would be governed (with minor exceptions) by the National Labor Relations Act. The Postal Service was authorized to recognize labor organizations and to negotiate collective bargaining agreements with them. 39 U.S.C. Sec. 1206(b). The National Rural Letter Carriers Association is an independent union not affiliated with other postal unions and is the exclusive bargaining representative for employees engaged in the delivery of rural mail. The Postal Service has entered into collective bargaining agreements with this union since the effective date of the Act in 1971.
 
 
 21
 Under 39 U.S.C. Sec. 1209(a) employee-management relations are subject to the National Labor Relations Act, except when inconsistent with the Postal Reorganization Act. Terms and conditions of employment are subject to collective bargaining. In the event of impasse, binding arbitration is used to determine conditions of employment. 39 U.S.C. Sec. 1207. The entry level pay provision to which plaintiffs object was established by an arbitration award, the "Volz Award", in 1984, which was incorporated in the 1984 collective bargaining agreement and carried forward into the successor 1988 agreement. In 1989 this entry level pay provision was challenged and was sustained in the "Zumas Award."
 
 II. The Sec. 1006 claim
 
 22
 With respect to the Sec. 1006 claim: The statute does not expressly provide for a private cause of action. We agree with the district court, and with all other courts that have considered the issue, that there is no implied private cause of action. Kaiser v. U.S. Postal Service, 908 F.2d 47 (6th Cir.1990), cert. denied --- U.S. ----, 111 S.Ct. 673, 112 L.Ed.2d 665 (1991). See also Gaj v. U.S. Postal Service, 800 F.2d 64 (3d Cir.1986) (refused to infer private cause of action under 39 U.S.C. Sec. 1001 because the intent of Congress in passing the Act, as shown by language and legislative history, was not to create a private remedy); Blaze v. Payne, 819 F.2d 128 (5th Cir.1987) (no employee right of action under Sec. 1001 because of the comprehensive labor law scheme and the right to collective bargaining embodied in the Act); Stupy v. The United States Postal Service, CIV 88-456-TUC-WDB, D.Ariz., 1/8/90 (postal employees, like private employees, may file unfair labor practice charges with the NLRB or pursue employment discrimination claims).
 
 
 23
 Plaintiffs contend that in various respects Sec. 1006 is violated. They do not infer this from the meaning of the term "transfer," which is not defined in the statute and is a term fraught with ambiguities and uncertainties, but rather assert that transfer must be "meaningful" and that meaningfulness is lacking because substitute carriers get categorical preference and need not take exams, transferees may have to enter at lower wage levels than they presently receive, and the process does not give effect to veterans' preference. Moreover, for purposes of filling rural carrier vacancies and setting entry pay levels the Postal Service has not created a discrete class of "transferees" (presumably to have the rights that plaintiffs believe appertain to incumbent employees seeking to transfer).
 
 
 24
 The district court did not reach the issue of whether Sec. 1006 is violated and we need not.[3]
 
 
 25
 III. The claim of plaintiffs under Sec. 1005(a)(2)
 
 
 26
 The district court responded to the veterans' preference issue by holding that Sec. 1005(a)(2) does not apply to job transfers within the Postal Service. We agree with the district court.
 
 
 27
 The Postal Reorganization Act, PL 91-375, 84 Stat. 719 (1970), created the Postal Service as an independent establishment of the executive branch. 39 U.S.C. Sec. 201 (1976). Pursuant to 39 U.S.C. Sec. 410(a), except as otherwise provided, federal law dealing with employees (including the provisions of Title 5, which, speaking generally, cover personnel matters respecting government employees) does not apply to employees of the Postal Service. Section 1005(a)(2) is an exception within the "otherwise provided" language of Sec. 410(a). By it the provisions of Title 5 relating to a preference eligible are made applicable to "an applicant for appointment and any other officer or employee of the Postal Service in the same manner and under the same conditions as if the applicant, officer, or employee was subject to the competitive service under such Title." This statutory language would appear to make applicable to the persons named in Sec. 1005(a)(2) every Title 5 provision that applies to the competitive service. But, as set out in Bredehorst v. U.S., 677 F.2d 87, 89-90, 230 Ct.Cl. 399 (1982), the intent of the amendment that became Sec. 1005(a)(2) was narrow, and the section only maintains and clarifies the rights previously guaranteed to veterans by the Veterans' Preference Act.
 
 
 28
 There is no question that plaintiff was a preference eligible employed by the Service. Rather, the issue raised here is what rights that status gave plaintiff in a dismissal proceeding.
 
 
 29
 Although section 1005(a)(2) is broadly written, the legislative history indicates that the provision was intended to have a much narrower effect. Senator Hartke introduced the amendment to the act which became section 1005(a)(2). Senator Hartke stated that the amendment was offered in order to
 
 
 30
 make crystal clear my own position in this regard, and to clarify and maintain all of those rights which veterans presently enjoy under existing law.
 
 
 31
 Under existing law, a veteran of the military service has certain rights in the postal service in the matter of employment and reemployment on returning from the military service. The veteran has the rights of appeal in adverse actions and the releasing of employees when reductions in the work force occur. These rights, guaranteed by the Veterans Preference Act of 1944, are the same rights enjoyed by veterans in any other branch of the competitive civil service.
 
 
 32
 Therefore, section 1005(a)(2) does not give a Service preference eligible employee the same rights as a federal employee in the competitive service but only the rights granted to veterans by the Veterans' Preference Act.
 
 
 33
 Id., 677 F.2d at 89 (footnotes omitted). Bredehorst, and the legislative history, were relied upon by the district court in this case in its holding that the rights given by Sec. 1005(a)(2) are these: preferences at employment, rights to challenge adverse actions, and seniority rights during layoffs. And, the court held, none of these incidents embraces a transfer as referred to in Sec. 1006. The district court held also that the Veterans' Preference Act created no "penumbral rights," citing Crowley v. U.S., 527 F.2d 1176, 1182, 208 Ct.Cl. 415 (1975). "[The provisions of the Act] are necessarily specific, and for plaintiffs to benefit they must show themselves to be clearly within the intended ambit of those provisions." Id., 527 F.2d at 1182-83. See also Wilson v. Merit Systems Protection Board, 807 F.2d 1577 (Fed.Cir.1986), holding that reductions in grade of Postal Service employee are covered by Sec. 1005(a)(2) but that classification provisions of Title 5 are not covered. The Federal Circuit held:
 
 
 34
 [T]he Postal Service is an independent organization that is subject to only limited application of federal employment laws. 39 U.S.C. Sec. 410(a) (1982). Preference eligible employees of the Postal Service do not have the same rights as employees in the competitive service, but have only the limited rights granted by the Veterans' Preference Act. See Bredehorst v. U.S., 677 F.2d 87, 88-89 [230 Ct.Cl. 399] (Ct.Cl.1982).
 
 
 35
 Id. at 1581. And see Powers v. U.S., 169 Ct.Cl. 626, 630 (1965) (no general policy of the government entitles a veteran to special treatment without regard to specific statutes and regulations).
 
 
 36
 We have examined the Veterans' Preference Act for possible indications that veterans' preference would apply to plaintiffs in their capacity as transferees because a transfer is within the meaning of "appointment" in Sec. 1005(a)(2). We find no such provisions. Section 2 of the Act, Pub.L. No. 359, ch. 287, 58 Stat. 387, (1944), sets out preferences: they are certification for appointment, appointment, reinstatement, reemployment, and retention in civilian positions. Section 3 provides for addition of points in examinations to determine qualifications for entrance into the service.
 
 Section 5 provides:
 
 37
 In determining qualifications for examination, appointment, promotion, retention, transfer, or reinstatement, with respect to preference eligibles, the Civil Service Commission or other examining agency shall waive requirements as to age, height, and weight....
 
 
 38
 This provision on "transfer" indicates that the Section 2 terms, "appointment," "reinstatement," "reemployment" and "retention" do not include "transfer."
 
 
 39
 In Qualls v. U.S., 678 F.2d 190, 230 Ct.Cl. 534 (1982), the Sixth Circuit addressed the issue of whether veterans' preference exists for one seeking to move to a different position within the same agency or is limited to only an initial appointment. Plaintiff, an engineer in training with the Corps of Engineers, and another trainee similarly situated, applied for a permanent position vacancy within the Corps. The other trainee was selected. (Though plaintiff was not an employee of the Postal Service the veterans' preference he asserted was that accorded him by the Veterans' Preference Act, the provisions of which are made applicable to the plaintiffs in this case by Sec. 1005(a)(2).) Plaintiff sued, asserting that his veterans' preference entitled him to be selected. The trial judge, whose opinion was adopted by the court of appeals, held:
 
 
 40
 A veteran is entitled to preference over non-veterans only in connection with an initial appointment to the federal service or in connection with a reduction-in-force among personnel in the same competitive level, neither of which was involved in the competition between the plaintiff and [the other trainee]. (Emphasis added.)
 
 
 41
 Id., 678 F.2d at 196-97.
 
 
 42
 Other provisions of the Postal Service Act demonstrate the differences between an "appointment" and a "transfer." Tit. 39, Sec. 1001(a), gives the Postal Service the power to "appoint" all officers and employees of the Service. Subsection (b) requires the Postal Service to adopt procedures for "appointments" made under sections 202, 204 and 1001(c). Persons "appointed" under Sec. 202 are the Board of Governors, Postmaster General and Deputy Postmaster General; and persons "appointed" under Sec. 204 are General Counsel, Assistant Postmasters General, and Judicial Officer, and those "appointed" under Sec. 1001(c) are individuals hired as executives under employment contract not to exceed five years.
 
 
 43
 Section 1001(e)(2) grants to the Postal Service the right consistent with other sections and collective bargaining agreements "to hire, promote, transfer, assign and retain officers and employees in positions within the Postal Service."
 
 
 44
 Title 5 Sec. 3503 concerns the rights of preference eligibles when one agency is replaced by another: "preference eligible employed in the agency to be replaced shall be transferred to the replacing agency (etc.)".
 
 
 45
 Kaiser v. U.S. Postal Service, 908 F.2d 47 (6th Cir.1990), cert. denied --- U.S. ----, 111 S.Ct. 673, 112 L.Ed.2d 665 (1991), concerned an employee who, like plaintiff Harris, had transferred from city carrier to rural carrier and suffered a pay reduction. Throughout its opinion the court spoke of plaintiff's "reassignment" and a right to transfer. Id. at 48, 50, 51, 52. Nowhere in the opinion is there any implication that the process of moving from city to rural carrier is an "appointment."
 
 
 46
 Therefore, we can find no basis within the Veterans' Preference Act for a conclusion that "appointment" in Sec. 1005(a) embraces "transfer" under Sec. 1006.
 
 
 47
 On appeal, having lost on their Sec. 1006 claim, plaintiffs set out, with special emphasis in their reply brief, a new claim that runs this way: Because there is not in effect a system by which they can meaningfully "transfer" to the rural carrier craft, they must be treated as applicants seeking initial employment, because it is only at a competitive initial employment event that their veterans' preference can be implemented.
 
 
 48
 There is neither whisper nor hint in the second amended complaint of any such claim as a basis for relief. See discussion, supra, of allegations of the complaint. See also, brief of plaintiffs to district court, Rec. 2, document 36, p. 28, n. 7:
 
 
 49
 For some reason unknown to the Plaintiffs, the Defendants at pages 14 and 15 state "prospective employees (as the plaintiffs appear to characterize themselves) or incumbent employees (as the plaintiffs are)...." Plaintiffs have no interest in characterizing themselves as prospective employees and do not understand the basis for the statement. (Emphasis added.)
 
 
 50
 * * * * * *
 
 
 51
 This [selection of substitute rural carrier associates to be regular rural carriers] is a clear violation of the Veterans' Preference rights of incumbent employee veterans seeking to transfer.
 
 
 52
 Id. at p. 7. And see also, brief of plaintiffs to this court, p. 20:
 
 
 53
 [T]he veteran Plaintiffs are willing to complete [for rural carrier positions] as if being selected for their first employment if they can use their veterans' preference rights. (Emphasis added.)
 
 
 54
 Plaintiffs can, of course, assert different and even contradictory claims. But they cannot assert for the first time on appeal a new claim not presented to the district court, and indeed disclaimed. Possibly this court should not address it. In any event, the facts cannot be changed by plaintiffs' recharacterizing their status. They are incumbent employees of the defendant agency who seek to be placed in different positions within the same agency. They have utilized their veterans' preference upon being "appointed" to initial employment with the agency. They wish to again assert veterans' preference in order to obtain new jobs that they consider more desirable by moving to different positions within the agency.[4] Nor can recharacterizations change the legal consequences. For reasons we have discussed, veterans' preference only applies to initial employment, not to movement of an incumbent employee from one job to another within an agency. The scope of veterans' preference cannot be enlarged by the fiction of treating within-agency movement as initial employment. That the filling of a rural carrier vacancy is an "initial employment event" for an applicant from outside the Postal Service does not make it the initial employment event for an incumbent employee seeking to make a job move within the agency.
 
 AFFIRMED.APPENDIX
 
 55
 In the United States District Court for the
 
 Northern District of Florida
 Tallahassee Division
 
 56
 RICHARD GLENN, et al., Plaintiffs,
 
 
 57
 v.
 
 
 58
 UNITED STATES POSTAL SERVICE, et al., Defendants.
 
 Case No. TCA 88-40090-MMP
 FINAL ORDER
 
 59
 This cause comes before the court upon defendants' motion for summary judgment (Doc. 12) and plaintiffs' cross motion for summary judgment (Doc. 30). Oral argument on the motions was heard on May 3, 1989. Based on the following discussion, defendants' motion is GRANTED and plaintiffs' motion is DENIED.
 
 BACKGROUND
 
 60
 Plaintiffs are six employees of the United States Postal Service (Postal Service) who are or were City Carriers represented by the National Association of Letter Carriers (NALC). Each of these employees is also a veteran eligible for preferences under 39 U.S.C. Sec. 1005(a)(2). Plaintiffs assert that they want to transfer to the Rural Carriers craft. Rural Carriers are represented by the National Rural Letter Carriers' Association (NRLCA).
 
 
 61
 The NRLCA and the Postal Service entered into a nationwide collective-bargaining agreement which contains provisions outlining how open positions are to be filled and setting the pay step for all new appointments to the craft. Three of these provisions are disputed here. First, Rural Carrier Associates (substitutes for regular Rural Carriers; associates do not take a competitive exam for employment and are not considered career employees) are given bid rights for regular Rural Carrier positions before all other Postal Service employees not covered by the NRLCA agreement. Most often, regular Rural Carrier positions are filled by Associates, leaving few openings for transferees from other crafts. Second, all individuals seeking transfer to the Rural Carrier craft must take a competitive exam. All individuals seeking to be hired directly to a regular Rural Carrier position, without first being an Associate, also must take the competitive exam. Third, all new appointments to the Rural Carrier craft must start at the lowest pay step, regardless of whether the individual is newly hired or transferred after numerous years of service in another Postal Service craft. This often requires transferring employees to take a pay cut.
 
 
 62
 Plaintiffs' complaint alleges that these provisions of the NRLCA agreement violate several of their statutory and constitutional rights. Specifically, they assert that giving Rural Associates an unconditional and absolute preference in bidding on Rural Carrier positions violates plaintiffs' right to a veterans' preference under 39 U.S.C. Sec. 1005(a)(2). Additionally, plaintiffs assert that requiring them to take a competitive pen-and-paper test to qualify for transfer violates the due process clause. They suggest that their experience as City Carriers renders a pen-and-paper test meaningless and the test requirement arbitrary. Finally, plaintiffs assert that requiring them to transfer into the Rural Carrier craft at a substantially lower pay step renders their right to transfer illusory. This transfer penalty, they assert, violates the Congressional directive to the Postal Service under 39 U.S.C. Sec. 1006 to use its transfer authority to provide maximum career promotion opportunities.
 
 
 63
 Defendants' suggest that they are entitled to summary judgment on four grounds. First, they assert that veterans' preferences do not apply to transfers. Second, the pen-and-paper test does not violate due process. Third, defendants' assert that 39 U.S.C. Sec. 1006 does not create a private cause of action. Fourth, defendants assert that the NRLCA agreement does not violate section 1006.
 
 VETERANS' PREFERENCES
 
 64
 The provisions of title 5 relating to preference eligibles "shall apply to an applicant for appointment and any officer or employee of the Postal Service in the same manner and under the same conditions as if the applicant, officer, or employee were subject to the competitive service under such title." 39 U.S.C. Sec. 1005(a)(2). This provision shall not be modified by any collective-bargaining agreement. Id.
 
 
 65
 Plaintiffs assert that the NRLCA agreement illegally modifies their preference rights by requiring them, when transferring, to compete against individuals who obtained their jobs without competing against preference eligibles. While plaintiffs' argument appears to have merit at first glance, it must fail. Veterans' preferences do not apply to transfers.
 
 
 66
 Although section 1005(a)(2) is broadly written, legislative history indicates that Congress intended it to have a much narrower effect. Bredehorst v. United States, 677 F.2d 87, 89-90, 230 Ct.Cl. 399 (1982). Senator Hartke, who introduced the amendment which became section 1005(a)(2), stated that the amendment was offered to clarify and maintain all of those rights which veterans were enjoying under existing law at that time.
 
 
 67
 Under existing law, a veteran of the military service has certain rights in the postal service in the matter of employment and reemployment on returning from the military service. The veteran has the rights of appeal in adverse actions and the releasing of employees when reductions in the work force occur. These rights, guaranteed by the Veterans Preference Act of 1944, are the same rights enjoyed by veterans in any other branch of the competitive civil service.
 
 
 68
 Bredehorst, 677 F.2d at 89.
 
 
 69
 Thus, section 1005(a)(2) does not give veterans the same rights as federal employees in the competitive service. Instead, the section gives preference eligibles in the Postal Service only those rights guaranteed by the Veterans Preference Act. Those rights only include preferences at employment, rights to challenge adverse actions and certain seniority rights during layoffs. Id.
 
 
 70
 Although case law discussing veterans' preferences in the context of employee transfers is scarce, cases discussing preferences in promotions are instructive. The Veterans Preference Act provisions are necessarily specific, and the act does not create any "penumbral rights." Crowley v. United States, 527 F.2d 1176, 1182, 208 Ct.Cl. 415 (1975). Plaintiffs must show themselves to be clearly within the scope of those provisions to receive their benefit. In Crowley, the court held that the act was not intended to create a general right to preferences in promotions. Furthermore, the court found that failure to receive a promotion was not an adverse action (triggering veterans' challenge rights) and granted summary judgment for defendants.
 
 
 71
 Likewise, the Veterans Preference Act does not create a general right to transfer, and failure to receive a transfer is not an adverse action. Additionally, an opportunity for transfer is different from an initial opportunity for employment. Therefore, this court finds that plaintiffs have no right to veterans' preferences in their attempts to obtain transfers.[1] The defendants' motion for summary judgment based on this issue is GRANTED.
 
 DUE PROCESS
 
 72
 Plaintiffs assert that requiring them to take a test and be placed on a roster in competition with unexperienced individuals violates plaintiffs' due process rights under the fifth amendment. They argue that their experience and proven competence to do the job renders any pen-and-paper test meaningless and, therefore, arbitrary as applied to their situations. Plaintiffs' argument is without merit.
 
 
 73
 Plaintiffs do not have a property or liberty interest in a transfer. Due process rights were not intended to protect mere hopes and wishes. Additionally, the decision to require a pen-and-paper test is not necessarily irrational or arbitrary. The Postal Service may well have decided that individuals with experience would perform better on the test than inexperienced individuals and that the test provides a good tool for comparing the two groups. Therefore, defendants' motion to dismiss based on the due process issue is GRANTED.
 
 CONGRESSIONAL DIRECTIVE
 
 74
 Plaintiffs assert that requiring City Carriers to take a substantial pay cut to transfer into the Rural Carrier craft acts as a barrier to transfer. This barrier, they assert, violates the congressional directive to the Postal Service to use its transfer authority "to provide a maximum degree of career promotion opportunities for officers and employees." 39 U.S.C. Sec. 1006.
 
 
 75
 Defendants argue that section 1006 does not provide a private right of action. In addition, they argue that the NRLCA agreement does not violate section 1006.
 
 
 76
 Section 1006 itself does not provide for any specific right of action.
 
 
 77
 Officers and employees in the postal career service of the Postal Service shall be eligible for promotion or transfer to any other position in the Postal Service or the executive branch of the Government of the United States for which they are qualified. The authority given by this section shall be used to provide a maximum degree of career promotion opportunities for officers and employees and to insure continued improvement of postal services.
 
 
 78
 39 U.S.C. Sec. 1006. Thus, to determine if a right of action is implied under section 1006, this court must ascertain the intent of Congress in enacting the Postal Reorganization Act (PRA).
 
 
 79
 Legislative history shows that Congress carefully delineated the postal structure to "[e]liminate serious handicaps that [were] imposed on the postal service by certain ... personnel policies that [were] outmoded, unnecessary, and inconsistent with the modern management and business practices that must be available if the American public is to enjoy efficient and economical postal service...." H.R. No. Rep. 1104, 91st Cong., 2d Sess. 2 (1970), U.S.Code Cong. & Admin.News 1970, pp. 3649, 3650. Congress recognized that "[p]ostal management ha[d] been severely and unjustly hampered in its efforts to administer the Department in a businesslike way." Id. at 5, U.S.Code Cong. & Admin.News 1970, p. 3653. Indeed, PRA was passed "to increase the ability of the Postal Service management to make decisions necessary to the efficient and effective operation of the postal system." Buchanan v. United States Postal Serv., 508 F.2d 259, 263 (5th Cir.1975).
 
 
 80
 Congress delegated broad authority to the Postal Service to determine its own personnel policies. For example, 39 U.S.C. Sec. 1001(a) provides that the Postal Service shall appoint officers and employees of the Postal Service. Such appointments "shall be in accordance with the procedures established by the Postal Service." 39 U.S.C. Sec. 1001(a). Further, Congress provided that the terms and conditions of employment for postal employees shall be established through collective bargaining under the National Labor Relations Act. 39 U.S.C. Sec. 1209. Thus, wages, seniority and job assignment rights would be established, as in the private sector, through collective bargaining. Congress also allowed for collective bargaining agreements to contain grievance procedures resulting in final and binding arbitration. 39 U.S.C. Sec. 1206. Furthermore, in keeping with private sector labor law, Congress gave employees the right to file suits to enforce collective bargaining agreements if their union fails to fairly represent them. 39 U.S.C. Sec. 1208(b). See Bowen v. United States Postal Serv., 459 U.S. 212, 103 S.Ct. 588, 74 L.Ed.2d 402 (1983). Employees may also invoke procedures of the National Labor Relations Board if their union fails to fairly represent them. 39 U.S.C. Sec. 1209(a); 29 U.S.C. Sec. 158(b).
 
 
 81
 After reviewing the legislative history and language of the statute, federal courts have declined to infer a private right of action under the PRA's employment provisions. See Blaze v. Payne, 819 F.2d 128 (5th Cir.1987); Gaj v. United States Postal Serv., 800 F.2d 64 (3d Cir.1986).
 
 
 82
 In Blaze, the Fifth Circuit refused to infer a private right of action under 39 U.S.C. Sec. 1001(b). The plaintiff sought damages resulting from a disciplinary action which was taken against him and subsequently was overturned by an arbitrator. After reviewing legislative history, the court rejected plaintiff's claim and stated that "[t]here is no room for the weedlike implied remedy, sought by Blaze in the flourishing garden of express employee remedies created pursuant to the Postal Reorganization Act." Blaze, 819 F.2d at 130.
 
 
 83
 The Third Circuit also refused to infer a private remedy under 39 U.S.C. Sec. 1001(b). Gaj, a former postal employee contended that the Postal Service violated section 1001(b) when it refused to rehire him. The court concluded that "[n]either the language of the statute nor its legislative history shows that Congress intended to create a private remedy." Gaj, 800 F.2d at 68.
 
 
 84
 The analysis of section 1001 resulting in a finding of no private right of action also applies to section 1006: the sections are similar. Neither contains a specific enforcement provision. Both were enacted with the comprehensive labor law scheme embodied in the PRA. See, Blaze, 819 F.2d at 130. And finally, both sections are of a general prescriptive character. See, Gaj, 800 F.2d at 68. Moreover, section 1006 does not require that the Postal Service grant transfers to every employee. It only makes employees eligible for transfers. Indeed, the language, "[t]he authority given by this section," makes clear that the section grants authority to the Postal Service rather than an enforceable right to employees.
 
 
 85
 This analysis leads inevitably to the conclusion that 39 U.S.C. Sec. 1006 does not provide a private right of action. Therefore, in the context of this case, this court need not consider whether the Postal Service violated section 1006.
 
 SUMMARY
 Based on the above discussion:
 
 86
 1. Defendants' motion for summary judgment based on the issue of veterans' preferences is GRANTED.
 
 
 87
 2. Defendants' motion for summary judgment based on the issue of due process is GRANTED.
 
 
 88
 3. Defendants' motion for summary judgment based on the issue of an implied right of action under 39 U.S.C. Sec. 1006 is GRANTED.
 
 
 89
 4. Plaintiffs' motion for summary judgment is DENIED.
 
 
 90
 5. The clerk shall enter final judgment in favor of all defendants.
 
 
 91
 DONE AND ORDERED this 19th day of July, 1990.
 
 
 92
 /s/ Maurice M. Paul
 
 United States District Judge
 
 
 [1]
 See discussion, infra
 
 
 [2]
 Plaintiffs asserted a due process claim in the district court. This was denied but is not presented on appeal
 
 
 [3]
 We note, however, that Sec. 1006 has been held not to express a "right to transfer" but "eligibility to transfer". "[S]ection 1006 does not confer an absolute right to transfer, but rather makes employees eligible for transfer and promotion. Kaiser, supra, at 52. McGarigle v. U.S. Postal Service, 904 F.2d 687 (Fed.Cir.1990), suggests that Sec. 1006 may prevent the Postal Service from impeding an employee's transfer from one division to another but may not be construed as precluding the reduction of an employee's compensation when the employee transfers to a lower paying position; the court said it "would not read Sec. 1006 to impose specific terms" upon the employee's transfer from city carrier job to rural carrier position
 See also, Pippin and Magnuson v. U.S. Postal Service and National Rural Letter Carriers' Association, D.Ct.Colo., 3/15/91, n. 8, Mss. pp. 11-12, 1991 WL 36542: "[T]he wording of Sec. 1006 and the legislative history indicate that the section is a grant of authority to the Postal Service and not a right to be enforced by employees ... An examination of Chapter 10, Title 39 shows that the Postal Service was granted broad authority to determine its own personnel policies ... Even the language '[the] authority given by this section' elucidates that Sec. 1006 grants authority to the postal service rather than an enforceable right to employees."
 
 
 [4]
 The sources of the veterans' preference claims alleged are murky. The second amended complaint alleged a veterans' preference right for persons who, like plaintiffs, have previously been employed by exercising that right. These persons would enter the process of filling rural carrier jobs (and presumably any other jobs in the Postal Service for which they wish to bid) cloaked with veterans' preference springing from their earlier assertion of the preference. In short, once employed in the Postal Service as a preferred employee always a preferred employee. The new theory raised on appeal suggests preference not springing from a prior exercise but a fresh right to preference because the applicants are to be treated as new employees
 Moreover, plaintiffs have nowhere defined the consequences of the veterans' preference they claim. In their brief, p. 11, they say: "The veterans' preference is implemented through the addition of points during a competitive selection process." Presumably this means that plaintiffs seeking rural carrier jobs by transfer are entitled to points on their exam scores. (We say "presumably" because elsewhere plaintiffs say that it is "irrational" to require city carriers to take an examination at all. Brief, p. 6, n. 4.) It is more problematic that veterans' preference would require an agency to change its negotiated labor policy which provides that incumbent substitute employees have categorical preference and are exempt from competitive exams. And it is at least doubtful that veterans' preference would entitle an applicant who is an incumbent employee to move into the new job at his present salary level, which is higher than that prescribed for entry by the collective bargaining agreement covering that job.
 In their brief plaintiffs say that transferees are not given credit for their "tenure" with the Postal Service. It is unclear how "credit for tenure" would impact upon the process of selecting persons to fill rural carrier positions and the pay levels of the selectees--position on the register, pay, some other incident of seniority, or what? In any event, deprivation of tenure was not alleged in the second amended complaint and we do not know whether "credit for tenure" is contended to be an incident of "meaningful transfer" under Sec. 1006 or "meaningful implementation" of veterans' preference under Sec. 1005(a)(2).
 
 
 [1]
 Plaintiffs appear to challenge the initial employment of Rural Carrier Associates without the Associates' being subject to a competitive exam and veterans' preferences. These are not the right plaintiffs to make that challenge. They have not competed against Associates for initial employment, a point at which veterans are eligible for preference