Bruce STUPY, for himself and for
others similarly situated,
Plaintiff–Appellant,

v.

UNITED STATES POSTAL SERVICE,
the National Rural Letter Carriers
Association, Defendants–Appellees.

No. 90–15496.

United States Court of Appeals,
Ninth Circuit.

Submitted May 16, 1991 *.

Decided Dec. 17, 1991.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Barbara Kaye Besser, Elfvin & Besser, Cleveland, Ohio, for plaintiff-appellant.

Stephen E. Alpern, Associate Gen. Counsel, Anthony W. DuComb, Senior Atty., U.S. Postal Service, Washington, D.C., for defendant-appellee U.S. Postal Service.

William B. Peer, Barr, Peer & Cohen, Washington, D.C., Gerald Barrett, Ward & Keenan, Ltd., Phoenix, Ariz., for defendant-appellee National Rural Letter Carriers Assn.

Before GOODWIN, SKOPIL, Jr. and CANBY, Circuit Judges.

GOODWIN, Circuit Judge:

Bruce Stupy brought this class action under section 1006 of the Postal Reorganization Act ("PRA"), 39 U.S.C. §§ 101–5605, to challenge the Postal Service's policy of providing an entry-level wage to letter carriers voluntarily reassigned from urban to rural areas. The district court dismissed the claim against the Postal Service on the ground that the PRA, 39 U.S.C. § 1006, does not confer a private right of action. The district court granted summary judgment on the breach of contract claim under 39 U.S.C. § 1208(b) against the National Rural Letter Carriers Association ("NRLCA") on the ground that the union did not owe a duty of fair representation to Stupy. 772 F.Supp. 1125.

In 1987, Stupy, a city letter carrier with the Postal Service in Nogales, Arizona, requested and received a reassignment to Tucson, Arizona, where he was to serve as a rural letter carrier, effective January 2, 1988. Urban and rural letter carriers are represented by different unions. Three weeks prior to the reassignment, Stupy received a letter from the Postal Service confirming the effective date and the salary for his new position. The salary, computed according to section 424.221 of the Postal Service Employee Relations Manual, was identical to his present salary. A week later, however, Stupy received a letter from the Postal Service informing him that his salary as a rural letter carrier would be substantially less than his present salary. The new computation was made in accordance with the wage provision of the collective bargaining agreement between the Postal Service and the NRLCA, known as the "Volz Award." That award states: "all new regular rural carrier appointees ... begin at Step B," the lowest step on the rural carrier pay scale. Stupy started as a rural letter carrier as planned and, some two weeks later, received formal notification of the salary reduction.

Stupy filed a grievance with the NRLCA, which he pursued through the initial levels of arbitration to no avail. He then withdrew his grievance from arbitration and appealed to the Merit Systems Protection Board ("MSPB"). The appeal was subsequently dismissed on a voluntary basis.

### I. Private Right of Action Under Section 1006

■ Section 1006 of the Postal Reorganization Act states:

Officers and employees in the postal career service of the Postal Service shall be eligible for promotion or transfer to any other position in the Postal Service or the executive branch of the Government of the United States for which they are qualified. The authority given by this section shall be used to provide a maximum degree of career promotion opportunities for officers and employees and to insure continued improvement of postal services.

39 U.S.C. § 1006. Whether that section confers an implied private right of action, an issue of first impression in this circuit, is determined by the four-part test announced by the Supreme Court in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975): (i) the plaintiff must belong to the class for whose *especial* benefit the statute was created; (ii) the legislature must have shown an intent, either explicitly or implicitly, to create a private remedy; (iii) finding an implied cause of action must be consistent with the underlying purposes of the statute; and (iv) the cause of action must not be one that has traditionally been left to state law. The Sixth and Eleventh Circuits have recently addressed this issue and have held that § 1006 does not create a private cause of action. *See Kaiser v. United States Postal Service,* 908 F.2d 47, 50–52 (6th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 673, 112 L.Ed.2d 665 (1991); *Glenn v. United States Postal Service,* 939 F.2d 1516, 1520 (11 Cir.1991). *See also Pippin v. United States Postal Service,* No. 90–A–855, 1991 WL 36542 (D.Colo. March 15, 1991).

■ Applying the four-part test of *Cort v. Ash,* the *Kaiser* court properly identified the dispositive issue to be legislative intent. 908 F.2d at 50–52. An evaluation of the other elements is not necessary if the court finds that Congress did not intend to create a private right of action. *See California v. Sierra Club,* 451 U.S. 287, 298, 101 S.Ct. 1775, 1781, 68 L.Ed.2d 101 (1981).

■ The search for legislative intent begins with an examination of the language of the statute and then proceeds to a review of the legislative history and the application of traditional aids of statutory interpretation. *See Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 13, 101 S.Ct. 2615, 2622, 69 L.Ed.2d 435 (1981). In *Kaiser* the court concluded that "[t]he language of section 1006 does not evidence an intent to create a private cause of action." 908 F.2d at 50. The court stated that 1006 was designed to protect an employee's eligibility for a benefit rather than to confer an entitlement to a benefit. This conclusion may read more into the statute than is

justified by its plain meaning. We find, however, that an examination of the legislative history and an evaluation of the broad legislative scheme implementing the PRA resolves any ambiguity that might exist in the language of the statute and militates against a finding of a private cause of action.

The Act embodies a comprehensive labor law scheme that not only gives postal employees the right to bargain collectively over the terms and conditions of their employment, *see* 39 U.S.C. §§ 1202–06, but also confers jurisdiction on the National Labor Relations Board ("NLRB") over employee charges of unfair labor practices, *see* 39 U.S.C. § 1209. In addition, the Act grants certain postal employees, particularly veterans, the option of appealing adverse employment actions before the Merit Systems Protection Board. *See* 39 U.S.C. § 1005. In the face of these express employee remedies, it would be improper to hold that Congress intended to confer a private right of action under 1006. *See Kaiser*, 908 F.2d at 51; *Glenn*, 939 F.2d at 1520; *Pippin*, slip op. at 10. Similar analysis has lead to the conclusion that other employment provisions of the PRA do not create a private right of action. *See Blaze v. Payne*, 819 F.2d 128, 130 (5th Cir.1987) (no employee right of action under § 1001 because of the comprehensive labor law scheme and right to collective bargaining under the PRA); *Gaj v. United States Postal Service*, 800 F.2d 64, 68–69 (3rd Cir.1986) (the language and history of § 1001 does not evidence an intent to create a private cause of action).

## II. Breach of Contract Under Section 1208(b)

■ Section 1208(b) of the Postal Reorganization Act gives federal courts jurisdiction over actions brought "for violation of contracts between the Postal Service and a labor organization representing Postal Service employees...." 39 U.S.C. § 1208(b). The *Kaiser* court outlined the requirements that a Postal employee must demonstrate to maintain a breach of contract claim:

> To recover from an employer for a violation of a collective bargaining agreement, an employee must first show that his union breached its duty of fair representation in handling his grievance. *Bowen v. United States Postal Service*, 459 U.S. 212, 103 S.Ct. 588, 74 L.Ed.2d 402 (1983). To establish that the union breached its duty of fair representation, the employee "must *attempt* use of the contract grievance procedure agreed upon by employer and union as the mode of redress." *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965) (emphasis in original). This Court has stated that "[i]t is axiomatic that an aggrieved employee must exhaust any exclusive grievance and arbitration procedure created in a collective bargaining agreement prior to bringing a ... suit against the employer." *Poole v. Budd Co.*, 706 F.2d 181, 183 (6th Cir.1983).

908 F.2d at 49. An exception to the principle of exhaustion will lie if the union's handling of the grievance is "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967); *see also Clayton v. International Union, U.A.W.*, 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981); *Ethridge v. Harbor House Restaurant*, 861 F.2d 1389, 1400 n. 7 (9th Cir.1988); *Galindo v. Stoody Co.*, 793 F.2d 1502, 1513 (9th Cir.1986).

■ When the Volz Award was negotiated in 1984, Stupy was not a member of the bargaining unit and the NRLCA owed him no duty. The NRLCA does, however, have a duty to represent all of its members, including those members who transfer from other crafts within the Postal Service. While the union had a duty to represent newly acquired members, the present action must be dismissed because Stupy failed to exhaust his remedies under the collective bargaining agreement. Stupy went through step–2 of the grievance procedure and then withdrew his claim in order to file an appeal with the MSPB. The appeal was subsequently withdrawn and was not followed through to completion. On these facts it is not possible to conclude that the remedies under the collective bargaining agreement were exhausted. In

*Kaiser,* the court held that a Postal Service employee failed to exhaust his options after following the grievance process up through step–4. 908 F.2d at 49.

■ Stupy does not contend that the union refused to represent him in the grievance process, and there is no evidence in the record that the union failed to pursue Stupy's claim. The only remaining issue, therefore, is whether Stupy has demonstrated that there exists a genuine issue of material fact as to whether the union acted in bad faith. Stupy contends that the union hierarchy agreed with the Postal Service's interpretation of the Volz Award provision in the agreement which resulted in his salary being set at Step B. It is conceivable that bad faith may exist if a union maintains an illegitimate contractual interpretation and prevents members from using established grievance procedures to challenge the provision. We conclude, however, that the union's interpretation in this case does not raise a genuine issue of material fact as to bad faith.

■ The union's interpretation of the contract is not unfounded or illegitimate. In *McGarigle v. United States Postal Service,* 904 F.2d 687 (Fed.Cir.1990), the court held that postal employees who transfer to become rural letter carriers must start at the Step B salary. The court rejected the argument that statements in the Employee Labor Management Relations Manual ("ELM") undermined the union's and the Postal Service's interpretation of the Volz Award. When the collective bargaining agreement conflicts with the ELM, the agreement controls. 904 F.2d at 691. The court also held that the union's interpretation was not inconsistent with § 1006.

Although § 1006 may prevent the Postal Service from impeding an employee's transfer from one division to another, it says nothing about the rights of a transferred or promoted employee in pay matters. It therefore cannot be construed as precluding the reduction of an employee's compensation when that employee transfers to a lower paying position.

*Id.* The court in *Kaiser* came to the same conclusion, holding that there was no conflict between the labor contract as interpreted by the Postal Service and 1006. 908 F.2d at 52.

Stupy argues that he is entitled to additional merits discovery to establish the existence of bad faith. The additional discovery would be aimed at demonstrating the illegitimacy of the union's interpretation of the contract. In light of *McGarigle* and our conclusion that the union's interpretation is legitimate as a matter of law, such discovery would serve no purpose. It is difficult to envision evidence that could lead this Court to hold that a contractual interpretation adopted as law in the Federal Circuit could constitute bad faith in the Ninth.

Stupy did not exhaust his remedies under the collective bargaining provisions of the contract and he failed to establish that the union acted in bad faith. The summary judgment in favor of NRLCA on the § 1208(b) claim must be affirmed. The claim under § 1006 against the Postal Service was properly dismissed because no private cause of action exists under that provision.

AFFIRMED.