Sebastian McGARIGLE, Petitioner,

v.

**UNITED STATES POSTAL SERVICE, Respondent.**

No. 89–3347.

United States Court of Appeals, Federal Circuit.

May 25, 1990.

Rehearing Denied Aug. 10, 1990.

688

Bruce B. Elfvin, Elfvin and Associates, Cleveland, Ohio, argued, for petitioner.

Anthony W. DuComb, Sr. Atty., Office of Labor Law, U.S. Postal Service, Washington, D.C., argued, for respondent. With him on the brief, were Stuart E. Schiffer, Acting Asst. Atty., Dept. of Justice and Stephen E. Alpern, Associate Gen. Counsel.

Before NEWMAN and ARCHER, Circuit Judges, and DUFF, District Judge.*

* The Honorable Brian Barnett Duff, Northern District of Illinois, sitting by designation pursuant to 28 U.S.C. § 293(a).

## OPINION

BRIAN BARNETT DUFF, District Judge.

Sebastian McGarigle has been a mailman for the past 22 years. After 18 years as a "city carrier", he transferred to a "rural carrier" position, and because of the collective bargaining agreement which governs transfers to the rural carrier position, his salary was significantly reduced. He has appealed the reduction, first to the Merit Systems Protection Board (MSPB or Board), and now to this court. The MSPB decided that it lacked jurisdiction to consider the question. We agree.

## BACKGROUND

Mr. McGarigle and his family decided to move to Florida after he had been a city carrier in New Jersey for 18 years. When Mr. McGarigle inquired about transferring, his supervisor told him that he would not be able to retain his city carrier salary if he accepted a rural carrier position. Mr. McGarigle nonetheless continued with his plans.

■ In August, 1986, Mr. McGarigle accepted a rural carrier position in New Jersey. Shortly thereafter he transferred to Florida. As his supervisor had warned him, Mr. McGarigle's salary was reduced.[1] The Board refused Mr. McGarigle's request that it restore his former salary, ruling that it lacked jurisdiction to consider the

question. He now asks this court to reverse the Board's finding.[2]

## THE COLLECTIVE BARGAINING AGREEMENT

In 1985, the National Rural Letter Carriers Association ("NRLCA"), the rural carriers' union, negotiated a collective bargaining agreement (the "Agreement") with the Postal Service. Clause 9.1.B.1 of the Agreement provides that "all new regular carrier appointees will begin at Step B, except for substitute rural carriers who convert to regular status." A neutral arbitration panel established that language pursuant to 39 U.S.C. § 1207.[3] Although Mr. McGarigle is of a different opinion, the Postal Service and the NRLCA agree that § 9.1.B.1 means that incumbent city carriers who become rural carriers must accept a Step B salary.

## MERIT SYSTEMS PROTECTION BOARD FINDINGS

The Board considered each of Mr. McGarigle's arguments. After various hearings, remands and appeals,[4] it dismissed Mr. McGarigle's case for lack of jurisdiction.

■ The Board's jurisdiction is limited by statute. If Congress has not specifically granted it jurisdiction over a particular type of dispute, then the Board has no

---

1. When Mr. McGarigle accepted his first rural carrier position, in Berlin, New Jersey, his salary was reduced to the lower, rural carrier level (the "B" scale). That salary was later "corrected" and his salary was raised above "B" level. He then transferred from New Jersey to Brooksville, Florida, and his salary was raised again. That salary, however, was also soon "corrected" to "B" level. Mr. McGarigle was reassigned to Sarasota, Florida, and his salary was raised again. Finally, he was told that his records were being corrected to reduce his salary once again to the "B" level.

2. Mr. McGarigle has appended certain exhibits to his brief which were not part of the record before the MSPB. Fed.R.App.P. 16 and 30, and Federal Circuit Rule 30 provide that the parties submit, and this court consider, only those materials which were before the MSPB, except if the material submitted serves to correct an omission or misstatement by the MSPB. Since

Mr. McGarigle's exhibits D, E, F, G and H do not serve that purpose, this court will disregard them.

3. Section 1207 sets forth procedures for arbitrating disputes about the terms of collective bargaining agreements.

4. An administrative judge ("AJ") dismissed Mr. McGarigle's appeal on October 19, 1987, for lack of jurisdiction. After review by the Board, the case was remanded to the AJ for a hearing on the jurisdictional question. After the hearing, the AJ again dismissed the case for lack of jurisdiction. On review, the Board affirmed the jurisdictional finding, pursuant to 5 C.F.R. § 1201.115, but nonetheless reopened the case on its own motion, pursuant to 5 C.F.R. § 1201.117, modified and affirmed the decision, still holding that it did not have jurisdiction over the matter. 40 M.S.P.R. 675.

power to decide it. In reaching its decision on the jurisdictional question, the Board was required to consider the Agreement. The Board agreed with the Postal Service and the NRLCA that the Agreement requires city carriers who transfer to rural carrier positions to accept a reduced salary. The Board found therefore that the "correction" of Mr. McGarigle's pay to the "B" scale was merely an administrative action taken pursuant to the terms of a valid and binding collective bargaining agreement. Since Mr. McGarigle had adequate notice that his salary would be reduced before he elected to accept the rural carrier position, the Board decided that it lacked jurisdiction to consider his appeal.

## HOLDING

Congress has granted this court jurisdiction over a "final order or final decision of the Board", 5 U.S.C. § 7703(b)(1) (1982), including review of a determination by the Board that it lacks jurisdiction. *Maddox v. Merit Systems Protection Board,* 759 F.2d 9, 10 (Fed.Cir.1985); *Manning v. Merit Systems Protection Board,* 742 F.2d 1424, 1427 (Fed.Cir.1984).

### A. The Board's Jurisdiction

The Board is authorized to hear appeals of only those actions which are "appealable to the Board under any law, rule, or regulation." 5 U.S.C. § 7701(a) (1988). If a federal employer reduces an employee's grade level, the employee may appeal that action to the Board. 5 U.S.C. §§ 7511, 7512 (1978).[5] The Board found that in Mr. McGarigle's case it was not the Postal Service's action, but his own, which caused the reduction in grade. Therefore, it did not have jurisdiction to hear his case.

Mr. McGarigle has presented three arguments to this court. First, he contends that he was assured by various superiors that his salary would not be reduced when he accepted the appointment to the rural carrier position. He also maintains that the Agreement does not require him to

accept a reduced salary and, to the extent it does, he should not be bound by it. Finally, he argues that 39 U.S.C. § 1006 (1070) precludes the Postal Service from reducing his pay upon his transfer. This court will consider each of these arguments in turn.

### 1. Notice of the Salary Reduction

There was substantial evidence before the Board that Mr. McGarigle was aware that the Postal Service intended to reduce his salary when he became a rural carrier. His supervisors in New York and New Jersey, and a union representative all testified (credibly, according to the administrative judge) that they discussed the salary reduction with Mr. McGarigle. Six weeks before he accepted the rural carrier position, his wife wrote a letter to a Congresswoman, complaining about the proposed pay cut. Since there was substantial evidence to support the Board's finding that Mr. McGarigle had notice of the pay reduction, this court will not disturb it.

### 2. The Effect of the Arbitration

■ The provision of the Agreement which is disputed here, § 9.1.B.1, was subjected to binding arbitration. Mr. McGarigle claims that he is not bound by the arbitration because he was not a party to it. He claims that, rather than being bound by the Agreement, he should be held only to the terms of the Employee Labor Management Relations Manual ("ELM"), which provides that he is not required to accept a pay cut when he transfers from a city to a rural carrier position.

Mr. McGarigle's argument is futile. The arbitration was between the Postal Service and the Union, not an individual carrier and the Postal Service. It was about the meaning of a term in the Agreement, not the treatment of a particular worker. In any case, as the Board found, Mr. McGarigle's decision to accept the rural carrier position was voluntary, and made with notice that the Postal Service intended to reduce his

---

**5.** See also 5 C.F.R. § 1201.3(a) (1989), which sets forth specific adverse actions which may be

appealed to the Board.

salary upon his acceptance of the job. Under these circumstances, Mr. McGarigle is in no position to challenge the interpretation of the Agreement which was adopted well before he accepted his new position.

### 3. The Effect of the ELM

■ Mr. McGarigle argues that neither the Agreement nor the ELM preclude him from continuing on his city-carrier salary upon his transfer to a rural-carrier position. As noted above, clause 9.1.B.1 of the Agreement provides that "all new regular carrier appointees will begin at Step B, except for substitute rural carriers who convert to regular status." Mr. McGarigle is not, he contends, a "new regular carrier appointee", since he merely "transferred" or was "reassigned" from his city carrier position. The Agreement conflicts with § 424.221 of the ELM (Issue 8, Mar. 17, 1983) only if the term "appointee" as used in the Agreement is interpreted to include reassigned or transferred employees. If so, then the Agreement must control[6] and Mr. McGarigle is entitled only to the Step B salary.

In other federal employment contexts, the term "appointment" does indeed have a well established meaning, *see, e.g., Horner v. Acosta,* 803 F.2d 687, 692–93 (Fed.Cir. 1986), and does not encompass a reassignment or transfer. There is, consequently, some superficial appeal to Mr. McGarigle's argument. However, his argument is not persuasive here because the meaning of the term "appointment" in the statutes and regulations does not control its usage in the Agreement, a contract memorializing the intentions of the respective parties.

■ The phrase "new regular rural carrier appointees" is subject to more than one reasonable interpretation. The Board therefore correctly considered parole evidence to determine its intended meaning in the Agreement. Both parties to the Agreement testified, and agreed that § 9.1.B.1 of the Agreement covered city carriers like Mr. McGarigle who accepted rural carrier positions.

■ The only evidence in the record which suggests a different meaning for § 9.1.B.1 is a statement in the Postal Service bulletin issued shortly after this and other provisions of the Agreement were arbitrated and before the text of the provision was available. The testimony indicates, however, that this bulletin statement was soon corrected by the Postal Service in a manner that is consistent with the interpretation now given that section by the parties to the Agreement. Since the Board properly determined that Mr. McGarigle's compensation was reduced to correct an administrative error, it lacked jurisdiction over his appeal. The Board's decision was therefore not arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence or otherwise not in accordance with law. *See Hayes v. Department of the Navy,* 727 F.2d 1535, 1537 (Fed.Cir.1984).

### 4. Effect of 39 U.S.C. § 1006

■ Mr. McGarigle's final argument is that even if the Agreement does mean that he must accept a reduced, rural carrier salary, the Postal Service is precluded from enforcing that provision by the Postal Service Reorganization Act (the Act), specifically, 39 U.S.C. § 1006. Section 1006 provides that "[o]fficers and employees in the postal career service of the Postal Service shall be eligible for promotion or transfer to any other position in the Postal Service...." Mr. McGarigle claims that language entitles him to the rural carrier job at a city carrier salary.

Although § 1006 may prevent the Postal Service from impeding an employee's transfer from one division to another, it says nothing about the rights of a transferred or promoted employee in pay matters. It therefore cannot be construed as precluding the reduction of an employee's compensation when that employee transfers to a lower paying position. Mr. McGarigle re-

---

**6.** "Those parts of all handbooks, manuals, and published regulations of the Postal Service, that directly relate to wages, hours or working conditions, as they apply to employees covered by this Agreement shall contain nothing that conflicts with this agreement...." Agreement, § 1, Article 19 (1984).

quested and was allowed a transfer from his city carrier job to the rural carrier position. This court would not read § 1006 to impose specific terms upon that transfer.

Mr. McGarigle has also argued that § 1006 confers a private right of action. This court need not address that question.[7] Furthermore, even if the statute did extend a private right of action, it does not provide that the MSPB would be the proper forum to enforce that right. The MSPB's jurisdiction is limited solely to that granted by "law, rule or regulation." *See* 5 U.S.C. § 7701(a).

## CONCLUSION

Mr. McGarigle has not stated a claim over which the Merit Systems Protection Board has jurisdiction. Accordingly, the decision of the Board is affirmed.

**AFFIRMED.**

7. We should note in passing, however, that neither Mr. McGarigle nor this court has discovered any case in which a court found a private right of action under § 1006, or indeed, under any of its companion provisions in the Act. In fact, the two circuit courts which have considered the question have decided that no such right exists. *Blaze v. Payne,* 819 F.2d 128, 129–130 (5th Cir.1987) (no private right of action under § 1001(b) which requires the Postal Service to establish procedures for promotion, because there was no clear congressional intent to create a private right, and in any case, it would have been redundant given the comprehensive labor law scheme embodied in the Act); *Gaj v. USPS,* 800 F.2d 64, 68 (3d Cir.1986) (no private right conferred in Postal Reorganization Act, which was intended only to meet the goals set forth in 39 U.S.C. § 101).