Susan SUMMAR, Plaintiff,

v.

**John E. POTTER, Postmaster General, and the United States Postal Service, Defendants.**

No. F02–0022 CV (RRB).

United States District Court, D. Alaska.

Jan. 26, 2005.

---

### ORDER RE PENDING SUMMARY JUDGMENT MOTIONS

BEISTLINE, District Judge.

### I. INTRODUCTION

Before the Court are Defendants John E. Potter, Postmaster General of the United States Postal Service, and the United States Postal Service ("USPS") with a Motion for Summary Judgment to dismiss the

Plaintiff's two remaining causes of action.[1] The first cause of action by Plaintiff Susan Summar ("Summar") claims that the USPS breached the Collective Bargaining Agreement ("CBA") causing her wrongful constructive discharge.[2] The USPS argues that this cause of action should be dismissed pursuant to Fed.R.Civ.P. 12(b)(1) because Summar lacks standing.[3] The second cause of action by Summar claims that the USPS violated Title VII of the Civil Rights Act.[4] The USPS argues that this cause of action should also be dismissed pursuant to Fed.R.Civ.P. 12(b)(1) because Summar failed to comply with the procedural requirements for filing a Title VII claim.[5] Summar opposes and filed a cross-motion for partial summary judgment.[6] Summar argues that she has standing to assert her breach of contract claim, equitable tolling applies to the Title VII claim, and summary judgment as to liability should be granted in her favor.[7]

Because the Court concludes that Summar failed to follow the procedural requirements for either claim, Defendants' Motion for Summary Judgment is **GRANTED** and Plaintiff's Motion for Partial Summary Judgment is **DENIED**. Furthermore, even had Plaintiff met the procedural requirements, Defendants' motion would still be granted and Plaintiff's denied because Plaintiff failed to make a *prima facie* case for either claim.

## II. FACTS

On August 3, 1985, Summar was hired as a Part Time Flexible employee ("PTF") at the Post Office in Tok, Alaska.[8] She was hired and then supervised by Dean Hutchinson ("Hutchinson"), who served as the Tok Postmaster until 2001.[9] At the same Post Office, Debra James ("James") was also a PTF who had been hired before Summar.[10] In 1990, Summar married James' brother and the two women became sisters-in-law.[11]

Summar's problems with the Post Office began in 1988 when she became pregnant.[12] She claims that Hutchinson told her that he was going to reduce her hours and that she should apply for the Office of Workers' Compensation ("OWCP") benefits.[13] Summar complained to Hutchinson's supervisor, resulting in Summar being allowed to continue working, though for fewer hours.[14] She did not file an EEO complaint or a grievance.[15] In 1991, Summar filed a grievance complaining that Hutchinson was improperly giving another employee too many hours.[16] The result of that grievance is not in the record.

---

1. Clerk's Docket No. 26 at 1.

2. Clerk's Docket No. 1 at ¶ 1. The Complaint does not make clear that the breach of contract claim is because of the constructive discharge. However, in the Plaintiff's opposition, it states that "Ms. Summar has two remaining claims: Breach of Contract (constructive discharge), and Title VII (harassment and retaliation)." Clerk's Docket No. 31 at 2.

3. Clerk's Docket No. 26 at 1.

4. Clerk's Docket No. 1 at ¶ 1.

5. Clerk's Docket No. 26 at 1.

6. Clerk's Docket No. 31 at 1.

7. *Id.* at 21 and 32.

8. *Id.* at Ex. 1, 11.

9. *Id.* at 9–11.

10. *Id.* at 10.

11. *Id.* at Ex. 2, 9.

12. *Id.* at Ex. 5, 4.

13. *Id.*

14. *Id.*

15. *Id.*

16. *Id.* at Ex. E, 5.

In July of 1992, Summar spoke with Hutchinson about what she felt was an uneven allocation of hours between the two PTFs (Summar and her sister-in-law, James).[17] Summar was scheduled to work 12 hours per week as a PTF and James was scheduled to work between 36–40 hours per week.[18] Summar sent a letter to the Fairbanks office explaining the problems in Tok, and the Fairbanks office replied with a letter addressing Summar's concerns.[19] These letters were also sent to Hutchinson, and Summar alleges that he showed these letters to her coworkers.[20] This led to a reduction in James's hours and Hutchinson told James that Summar was after James's job.[21] According to Summar, her relationship with James deteriorated after this incident.[22] In October of 1992, James became the full time clerk at the Tok Post Office.[23] Hutchinson had planned on eliminating this position, but he was unable to do so because he failed to follow the procedural requirements.[24]

In September of 1993, Summar filed an EEO complaint for sexual discrimination against Hutchinson.[25] Hutchinson had hired a male PTF, and Summar alleged that he was given more hours than both her and James, even though the women had more seniority.[26] This matter was eventually resolved in favor of Summar.[27]

For the next six years, Summar alleges that James continually harassed her.[28] The harassment involved snide remarks, sabotaging leave time, and other general harassment.[29] However, these comments were made in private where no one could overhear.[30] At work in April of 1998, Hutchinson and Summar overheard James describe to another employee how James' son had killed an animal with a tire iron.[31] Hutchinson verbally reprimanded James, stating that this type of conversation was not appropriate for the workplace.[32] Later that evening, Summar alleges that her sister-in-law, James, phoned her at home and threatened her life.[33] Summar complained to Hutchinson about this phone call and it was resolved without filing a formal complaint.[34]

In 2001, Hutchinson left the Tok Post Office and was replaced by Virginia Ward ("Ward").[35] According to Summar, Hutchinson informed Ward of the problems between James and Summar.[36] Regardless, Ward stated that she initially observed that James and Summar worked well together and that neither woman complained

17. *Id.* at 6.

18. *Id.*

19. *Id.;* Ex. G.

20. *Id.* at Ex. D, 11–12.

21. *Id.*

22. *Id.* at 12.

23. *Id.* at Ex. H, 2.

24. Clerk's Docket No. 31 at Ex. 1, 28–30.

25. *Id.* at Ex. 3.

26. *Id.* Ex. 5, 12; Clerk's Docket No. 1 at ¶ 9.

27. Clerk's Docket No. 31 at Ex. 3.

28. *Id.* at Ex. 5, 5.

29. *Id.* At this same time, there were disagreements between the husbands of Summar and James over snow machines and snubs over who was sent Christmas cards. *Id.* at Ex. 3, 28 and 81.

30. Clerk's Docket No. 26 at Ex. D, 88–89.

31. Clerk's Docket No. 31 at Ex. 5, 5.

32. Clerk's Docket No. 26 at Ex. A, 17.

33. Clerk's Docket No. 31 at Ex. 5, 4–5.

34. Clerk's Docket No. 26 at Ex. A, 23.

35. Clerk's Docket No. 31 at Ex. 5, 23.

36. *Id.* at Ex. 7, 59–60.

about the other.[37] Summar stated that she tried to tell Ward about her prior participation in grievances, but that Ward did not want to hear about what happened in the office prior to her arrival.[38] During Ward's tenure, James called Summar a "troublemaker," and even though Summar complained to Ward, no action was taken.[39]

With Ward, Summar's schedule changed and she was assigned more split shifts.[40] A split shift occurs when the PTF has an unpaid break of longer than one hour between two periods of work.[41] Summar also alleges that her schedule was changed more frequently than others in the Post Office.[42] When Summar discussed this with Ward, she was told that she was an undesirable employee.[43] Summar also complained to the Union that Ward did not allow her to fill in for the full-time clerk when the full-time clerk was on vacation, and instead, cut her hours and scheduled her a split shift.[44] The Union filed a grievance and it was denied at Step Three.[45]

Summar also had conflicts regarding holidays and scheduled vacation time. Ward twice told Summar and another employee that they would have to work holidays.[46] However, each time the employees were allowed to enjoy the holiday.[47] The vacation scheduling problem arose when Summar tried to schedule a Hawaiian vacation that her husband had already purchased.[48] James was already scheduled for leave at this time, and Ward advised Summar that the two women should work out the conflict themselves.[49] Summar pointed out that James had initially selected too much leave time and the leave schedule was redone.[50]

In January of 2002, a Tok postal employee was diagnosed with cancer and had to go on indefinite leave.[51] Ward spoke with both James and Summar and asked them if they would give up their previously approved Saturday leave.[52] James replied first that she would give up her leave time.[53] Summar declined to give up her leave time because she had money invested in a snow machine race for that Saturday.[54] Nevertheless, despite the fact that James had volunteered to give up her leave, Summar felt some pressure to do so at the time.[55]

Later that day, Summar asked to speak with Ward and James again.[56] Summar explained that James's agreement to give up her leave made it seem that Summar did not want to help the ill employee.[57]

37. *Id.* at Ex. 10.

38. *Id.* at Ex. 5, 8.

39. *Id.* at 6.

40. Clerk's Docket No. 26 at Ex. D, 18.

41. *Id.*

42. Clerk's Docket No. 31 at Ex. 5, 6.

43. *Id.* at 23.

44. Clerk's Docket No. 26 at Ex. L, 1.

45. *Id.* at 5.

46. Clerk's Docket No. 31 at Ex. 5, 24–25.

47. *Id.*

48. Clerk's Docket No. 26 at Ex. B. 11.

49. *Id.* at 12.

50. Clerk's Docket No. 31 at Ex. 7, 56.

51. *Id.* at Ex. 8, 21.

52. Clerk's Docket No. 26 at Ex. B, 16.

53. *Id.*

54. *Id.* at 17.

55. Clerk's Docket No. 31 at Ex. 5, 11.

56. *Id.* at Ex. 7, 254.

57. *Id.*

James apologized.[58] Summar went on to say that she was sick of various "snide" comments James had made about her and that she had had it.[59] Ward then left the office to help a postal customer, while Summar and James continued to talk.[60] When Ward returned, Summar announced that she was very stressed and was leaving.[61] Summar left the Post Office and did not return.[62]

When Summar left the Post Office, she went to the Tok Clinic.[63] The doctor placed Summar on a 14–day medical leave.[64] According to Summar, she had experienced a panic attack.[65] Later in January, Summar was placed on OWCP temporary Continuation of Pay ("COP").[66] It was determined that Summar would be paid for 28 hours per week while on COP.[67] On February 16, Summar was removed from COP and began using her accumulated leave.[68] Until her leave expired, she received an average of 30 hours per week.[69] However, the week of February 3, Summar requested 30 hours and only received 25 hours.[70]

In October, James retired from the USPS creating a vacancy in the full time position.[71] The Anchorage USPS Area Manager notified the Union of the USPS's intention to revert (eliminate) the position.[72] In November, the position was officially reverted.[73] The Union filed a grievance.[74] After the reversion, Summar inquired into whether she would be offered the full time position.[75] Ward notified her that the position had been reverted.[76] In August, the grievance was settled and the USPS restored the full time position.[77] Since Summar had been the senior PTF, she received back pay in excess of her leave hours.[78]

Summar brought suit in federal court alleging employment discrimination (harassment and retaliation) under Title VII of the Civil Rights Act, wrongful constructive discharge, breach of an employment contract, and unlawful harassment, in violation of Alaskan common law.[79] The only issues remaining are breach of contract because of wrongful constructive discharge and the Title VII claims.

## III. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judg-

**58.** *Id.*

**59.** *Id.*

**60.** *Id.*

**61.** *Id.*

**62.** *Id.* at 254–55.

**63.** *Id.* at 255.

**64.** *Id.*

**65.** *Id.* at Ex. 5, 11.

**66.** Clerk's Docket No. 26 at Ex. T.

**67.** *Id.*

**68.** *Id.*

**69.** *Id.* at Ex. U. For the first week that Summar used accumulated leave, she only requested and received 25 hours. *Id.*

**70.** *Id.*

**71.** *Id.* at Ex. Y, 1.

**72.** *Id.*

**73.** *Id.* at 5.

**74.** *Id.*

**75.** *Id.* at Ex. Z.

**76.** *Id.*

**77.** *Id.* at Ex. Y, 8.

**78.** *Id.*

**79.** Clerk's Docket No. 1.

ment should be granted if there is no genuine dispute as to material facts and if the moving party is entitled to judgment as a matter of law. The moving party has the burden of showing that there is no genuine dispute as to material fact.[80] The moving party need not present evidence; it needs only point out the lack of any genuine dispute as to material fact.[81] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[82] All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[83] However, the nonmoving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[84]

## IV. DISCUSSION

### A. Collective Bargaining Agreement Claim

■ Summar alleges that the USPS breached the Collective Bargaining Agreement ("CBA") causing a wrongful constructive discharge, and she brings suit under 39 U.S.C. § 1208(b).[85] However, Summar failed to meet the requirements to bring such a claim.[86] To maintain a breach of a collective bargaining agreement claim, a Postal employee "must first show that his Union breached its duty of fair representation in handling his grievance."[87] "To establish that the Union breached its duty of fair representation, the employee 'must attempt use of the contract grievance procedure agreed upon by employer and Union as the mode of redress.'"[88]

■ Here, Summar did not attempt use of the contract grievance procedure set out in the CBA. The agreement between the USPS and the Union provided for a four step grievance procedure.[89] Step One required either the aggrieved employee or the Union to initiate a discussion with the employee's supervisor.[90] This is mandatory and binding.[91] Summar did not initiate

---

80. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

81. *Id.* at 323–25, 106 S.Ct. 2548.

82. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

83. *Id.* at 255, 106 S.Ct. 2505.

84. *Id.* at 248–49, 106 S.Ct. 2505.

85. Clerk's Docket No. 1 at ¶ 1; Clerk's Docket No. 14 at 3. *See* 39 U.S.C. § 1208(b) ("Suits for violations of contracts between the Postal Service and a labor organization representing Postal Service employees ... may be brought in any district court of the United States having jurisdiction of the parties without respect to the amount in controversy.").

86. Further, the USPS has a separate argument, discussed *infra*, that the constructive discharge claim is barred because Summar

did not properly pursue the claim through the EEO process. Clerk's Docket No. 32 at 8.

87. *Stupy v. United States Postal Service*, 951 F.2d 1079, 1082 (9th Cir.1991) (citations omitted).

88. *Id.*

89. Clerk's Docket No. 26 at Ex. F, 89–97.

90. *Id.* at 89–90 ("Any employee who feels aggrieved *must* discuss the grievance with the employee's immediate supervisor within fourteen (14) days of the date on which the employee or the Union first learned or may reasonably have been expected to have learned of its cause.").

91. *See* discussion at Clerk's Docket No. 32 at 3–4. The Court agrees with this analysis.

such a discussion. Summar argues that her second conversation with Ward on January 2, 2002, constituted initiating a grievance with the employee's immediate supervisor.[92] However, while Summar initiated this discussion, it was not the initiation of a grievance. Summar herself stated in her deposition that she never filed a grievance concerning the events of January 2, 2002.[93] She also stated that she never filed a grievance against Ward.[94] It is not enough for an attorney to classify a conversation as a grievance. If neither the employee nor the supervisor recognized a conversation as a grievance when it took place, it cannot subsequently be recast as such for purpose of litigation. It is therefore clear that Summar did not timely initiate a grievance.

 In the alternative, Summar argues that she was excused from filing a grievance. Summar relies on *Beard v. Baum*,[95] an Alaskan case; however, Alaska law does not apply to this issue. Rather, under Federal law, exhaustion is excused if the Union's handling of the grievance is "arbitrary, discriminatory, or in bad faith."[96] Summar presented no evidence that the Union acted in such a manner. Further, given the fact that Summar and her Union representative were often in contact,[97] her Union representative encouraged her to file an EEO complaint,[98] and the Union filed other grievances on behalf

of Summar,[99] it cannot be said that the Union acted in bad faith toward Summar. Therefore, Summar was not excused from first exhausting her administrative remedies before filing this action in federal court.

 Even if Summar's claim was not procedurally barred, she failed to plead a claim for breach of the CBA and wrongful constructive discharge. Summar never states what section of the CBA was breached, only that the USPS is responsible for her constructive discharge. A constructive discharge "occurs when the working conditions deteriorate, as a result of discrimination, to the point that they become 'sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer.' "[100] The employee must show some aggravating factors, such as a continuous pattern of discriminatory treatment.[101] The question of whether the working conditions are sufficiently egregious to support a constructive discharge theory is normally a jury question.[102] However, a district court may determine that the plaintiff's claim fails as a matter of law when no reasonable trier of fact could find that the plaintiff was driven from the workplace.[103]

**92.** Clerk's Docket No. 33 at 15.

**93.** Clerk's Docket No. 31 at Ex. 5, 13.

**94.** *Id.* at 7.

**95.** 796 P.2d 1344 (Alaska 1990).

**96.** *Stupy v. United States Postal Service*, 951 F.2d 1079, 1082 (9th Cir.1991) (quoting *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)).

**97.** *See id.*; Clerk's Docket No. 26 at Ex. R.

**98.** Clerk's Docket No. 26 at Ex. R.

**99.** *Id.* at Ex. L, 5 and Ex. Y, 8.

**100.** *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir.2000) (quoting *Turner v. Anheuser–Busch, Inc.*, 7 Cal.4th 1238, 32 Cal. Rptr.2d 223, 876 P.2d 1022 (1994)).

**101.** *Watson v. Nationwide Insurance Co.*, 823 F.2d 360, 361 (9th Cir.1987) (citation omitted).

**102.** *Brooks,* 229 F.3d at 930.

**103.** *Id.*

■ Here, no reasonable trier of fact could find that Summar was driven from the workplace. In *Brooks,* the Court found that many of the plaintiff's complaints were routine, such as schedule changes and denying her vacation leave preference, and could not be sufficiently egregious to amount to a constructive discharge.[104] Here, Summar's complaints include arguments and snubs with her sister-in-law, Ward being told that Summar had previously filed a grievance, Ward reprimanding Summar and telling her that she was an undesirable employee on one occasion, schedule changes, and a file documenting Summar's work.[105] Taken collectively, these are not extraordinary or egregious events showing discriminatory working conditions.[106]

### B. Title VII Claim

#### 1. First EEO Complaint

Summar alleges that the USPS breached Title VII, but again, she failed to follow the procedural requirements. To bring a Title VII claim in federal district court, the Plaintiff must have first exhausted her administrative remedies.[107] Under Title VII's statutory scheme, a federal employee is required to notify an EEO counselor of discriminatory conduct within 45 days of the alleged conduct.[108]

■ Here, Summar admits that she failed to comply with this requirement for her First EEO Complaint filed on March 28, 2002, but she argues that equitable tolling should apply.[109] The Plaintiff has the burden of establishing entitlement to equitable tolling.[110] Equitable tolling "has been consistently applied to excuse a claimant's failure to comply with the time limitations where she had neither actual nor constructive notice of the filing period." [111] Summar is not entitled to equitable tolling because she had actual notice of the time limitations in filing an EEO complaint. She gained this knowledge through her previous experience filing a timely EEO complaint.[112]

■ Nonetheless, Summar argues that she is entitled to equitable tolling because she was suffering panic attacks, taking the drugs Paxil and Clonazepam, and "very emotionally disturbed and incapable of dealing with the Post Office." [113] However, the only case relied on by Summar, *Campbell v. Wood,*[114] is completely inapposite. It is a death policy decision and contains no language about equitable tolling for administrative filing periods. Regardless, the Court is not persuaded that Summar is entitled to equitable tolling for the reasons raised by her attorney. She put forth no evidence about how the drugs

---

**104.** *See id.*

**105.** Clerk's Docket No. 33 at 5–7. The reversion of the full-time position at the post office happened after Summar left the Post Office.

**106.** Even though Ward only had a file on Summar, all PTFs were subject to schedule changes and being reprimanded for perceived wrongdoings.

**107.** *Greenlaw v. Garrett,* 59 F.3d 994, 997 (9th Cir.1995)(citing *Brown v. General Services Administration,* 425 U.S. 820, 832, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976)).

**108.** 29 C.F.R. § 1614.105(a)(1).

**109.** Clerk's Docket No. 31 at 32. *See Zipes v. Trans World Airlines,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (holding that equitable tolling applies to administrative exhaustion requirements).

**110.** *Hinton v. Pacific Enterprises,* 5 F.3d 391, 395 (9th Cir.1993).

**111.** *Leorna v. United States Dep't of State,* 105 F.3d 548, 551 (9th Cir.1997).

**112.** Clerk's Docket No. 1 at ¶ 9.

**113.** Clerk's Docket No. 31 at 32–33.

**114.** 18 F.3d 662, 681 (9th Cir.1994).

she was taking affected her mental state. The Court notes that in this same time frame, Summar was able to fill out a workers' compensation claim,[115] talk with a Union representative,[116] and compete in a snow machine race.[117]

Even if the Court were to allow equitable tolling, Summar failed to make a *prima facie* case of retaliation under Title VII. To make out a *prima facie* case, Summar must establish that: (1) she engaged in activity protected by Title VII; (2) her employer subjected her to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action.[118] The burden of production then shifts to the USPS to "advance legitimate, non-retaliatory reasons for any adverse action" taken against Summar.[119] The ultimate burden then rests with Summar to show that these proffered reasons are merely pretextual.[120]

▮▮▮ Protected activity in this context includes participating in EEO proceedings.[121] An adverse employment action is "adverse treatment that is reasonably likely to deter employees from engaging in protected activity." [122] The action must be reasonably likely to deter either the complaining party or other employees.[123] While the Court of Appeals for the Ninth Circuit adopted an expansive view of what constitutes an adverse employment action, there are limits. Mere ostracism in the workplace is not an adverse employment action.[124] Neither is badmouthing an employee when it is not in the context of a job reference.[125] Wrongful constructive discharge would be an adverse employment action.

▮▮▮ Here, Summar engaged in protected activity in 1992 when she filed her EEO complaint alleging sex discrimination.[126] However, she did not suffer an adverse employment action. The comments, looks, and snubs by James are insufficient to make out a claim for adverse employment action. Summar's schedule also does not constitute an adverse employment action. Split shifts are allowed for PTFs, as are changes to the schedules of PTFs.[127] Thus, scheduling an employee in accordance with the job description and requirements cannot be likely to deter other employees from engaging in protected activity. Ward asking Summar to give up a Saturday leave is not an adverse employment action. The reversion was not an adverse employment action, and even though it followed Summar's retirement, it is not likely that this action would deter others from protected activity. Finally, as discussed *supra*, Summar was not constructively discharged, and so that cannot

**115.** Clerk's Docket No. 31 at Ex. 5, 12 and 25.

**116.** *Id.* at 18–19 and 25.

**117.** *Id.* at 28; Clerk's Docket No. 26 at Ex. E, 33–34.

**118.** *Steiner v. Showboat Operating Co.,* 25 F.3d 1459, 1464 (9th Cir.1994) (citation omitted).

**119.** *Id.* at 1464–65.

**120.** *Id.* at 1465.

**121.** *Ray v. Henderson,* 217 F.3d 1234, 1240 (9th Cir.2000).

**122.** *Id.* at 1237.

**123.** *Id.* at 1242–43.

**124.** *Strother v. Southern California Permanente Medical Group,* 79 F.3d 859, 869 (9th Cir.1996).

**125.** *Nunez v. City of Los Angeles,* 147 F.3d 867, 875 (9th Cir.1998).

**126.** Clerk's Docket No. 1 at ¶ 9.

**127.** Clerk's Docket No. 26 at Ex. I.

suffice to be an adverse employment action.

■■■■■ The only evidence pointed to by Plaintiff to show adverse employment action is that James admitted that she had told Ward of Summar's earlier EEO complaint. Even if this did prejudice Ward against Summar, this does not state an adverse employment action. As already discussed, Summar's schedule under Ward was not shown to be an adverse employment action. Reprimanding Summar for allegedly "badmouthing" the USPS to customers is not an adverse action. This one reprimand was not shown to be false or unwarranted. Ward telling Summar that she and another employee would have to work holidays because of a backlog in the office is not an adverse employment action. Neither was Ward's action of reducing the hours given to Summar in one leave slip: that extended her time of leave rather than reducing it.[128]

■■■■■ Even if Summar made out a *prima facie* case, the USPS articulated legitimate reasons for its actions and Summar failed to show that these reasons were merely pretextual. First, the USPS advanced legitimate reasons for the schedule changes. The rationale for assigning Summar to work split shifts was because the office is only busy in the morning and late afternoon.[129] The reason that Summar and another employee were told they might have to work holidays was because there was a backlog of work in the Post Office.[130] Finally, the Post Office showed that schedule changes are allowed for PTFs and there is no requirement for advance notice.[131] Summar was not the only PTF subject to split shifts and schedule changes.[132]

■■■■ Second, the USPS advanced legitimate reasons for the reversion. The USPS wanted to revert the position because it preferred to maximize part time positions and minimize full time positions.[133] Further, the USPS had wanted to revert the position before Summar was even eligible for it, but was unable to do so because it failed to follow the proper procedure.[134] There was not another opportunity for the USPS to revert the position until the retirement of James.[135]

### 2. Summar's Remaining Claims are Barred

■■■■ Summar's complaint included claims of disparate treatment in scheduling and wrongful reversion of the full time position.[136] In the USPS' motion for summary judgment, the USPS argued that these claims are also procedurally barred.[137] Summar failed to oppose this argument. For the following reasons, the Court agrees that these additional claims are also improperly before the Court. First, the claim of disparate treatment was added to the second EEO complaint filed on October 10, 2002.[138] EEO regulations require a complainant to wait for either final agency action or 180 days before bringing suit in federal court.[139] Here,

---

128. *Id.* at Ex. U.

129. *Id.* at Ex. L, 3–4.

130. Clerk's Docket No. 31 at Ex. 7, 31–32.

131. Clerk's Docket No. 26 at Ex. I, 3.

132. Clerk's Docket No. 31 at Ex. 8, 16–19; Clerk's Docket No. 32 at 16–17.

133. Clerk's Docket No. 26 at Ex. B, 48–49.

134. *Id.* at Ex. A, 28–29.

135. *Id.* at 29–30.

136. Clerk's Docket No. 1.

137. Clerk's Docket No. 26 at 26–32.

138. *Id.* at Ex. EE.

139. 29 C.F.R. § 1614.407.

Summar did not wait for a final action by the USPS and waited only 78 days before bringing her disparate treatment claim to the federal court.[140] Thus, she filed her claim prematurely.

■ Second, Summar's third EEO complaint, filed on March 28, 2003, included a claim of constructive discharge.[141] This claim also was filed prematurely because it was filed after Summar filed the action in federal court, and thus did not comply with the EEO regulations.

■ Third, Summar's claim that the reversion of the full-time position was retaliatory and due to gender discrimination was never presented in any of her EEO filings.[142] When an employee seeks judicial relief for a claim not listed in an EEO complaint, subject matter jurisdiction will extend over all allegations that either "fell within the scope of the EEOC's *actual* investigation or an EEOC investigation which *can reasonably be expected* to grow out of the charge of discrimination." [143] Thus, allegations of discrimination not included in a plaintiff's EEO complaint cannot be considered by a district court unless the new claims are "like or reasonably related" to the allegations contained in the EEO complaint.[144] To make this determination, courts can consider factors such as the alleged basis of the discrimination, the dates of the discriminatory acts in the charge, the named perpetrators of the discrimination, and the location where the discrimination allegedly occurred.[145]

■ Here, the new claims of retaliatory reversion and gender discrimination are not like or reasonably related to her EEO claim. None of Summar's EEO filings discussed the reversion of the full-time position. Thus, whether the reversion was retaliatory was not investigated, and such an investigation could not have been reasonably expected to grow out of Summar's charges. Nothing in Summar's affidavit would have led the EEO investigator to suspect that there was a reversion of the full-time position, or even that it was in retaliation.

■ The same problems lie in Summar's claim of gender discrimination. In all of Summar's EEO claims, she maintained that retaliation for engaging in protected activity was the motivation for her adverse treatment.[146] She had the opportunity to check the box for sex discrimination and did not. Further, her affidavits discuss the problems Summar had with James and Ward and never discuss any problems with male postal employees. Again, it cannot be said that this claim is like or reasonably related to the retaliation claims and so it, too, is not exhausted.

## V. CONCLUSION

For the reasons stated herein, Defendants' Motion for Summary Judgment is **GRANTED** and Plaintiff's Motion for Partial Summary Judgment is **DENIED**. The Court concludes that Plaintiff's causes of action are procedurally barred. Moreover, even if the causes were procedurally prop-

**140.** This action was filed on December 27, 2002. Clerk's Docket No. 1.

**141.** Clerk's Docket No. 26 at Ex. FF.

**142.** *See* Clerk's Docket No. 26 at Exs. AA, CC, EE, and FF.

**143.** *E.E.O.C. v. Farmer Bros.*, 31 F.3d 891, 899 (9th Cir.1994) (citation omitted).

**144.** *Id.*

**145.** *Freeman v. Oakland Unified School District*, 291 F.3d 632, 636 (9th Cir.2002) (citation omitted).

**146.** *See* Clerk's Docket No. 26 at Exs. AA, CC, EE, and FF.

er, Plaintiff failed to state causes of action upon which relief can be granted.